## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| BETHANY R. SCAER and STEPHEN SCAER, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF NASHUA, a municipal corporation; JAMES W. DONCHESS, Mayor, City of Nashua, in his official and individual capacities; JENNIFER L. DESHAIES, Risk Manager, City of Nashua, in her official and individual capacities, <br><br> Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

### INTRODUCTION

The City of Nashua reserves a "Citizen Flag Pole" in front of city hall for people "to fly a flag in support of cultural heritage, [to] observe an anniversary, honor a special accomplishment, or support a worthy cause."

Unless city leaders dislike the message. According to the city's written flag policy, only speech which Nashua "wishes to express and endorse"—speech that is "in harmony with city policies and message" and in "the City's best interest"—is allowed. Thus, while officials have allowed Nashua residents to fly flags celebrating causes such as Indian Independence Day, Lutheranism, Pride Month, organ

donation, and women's suffrage on the "Citizen Flag Pole," they have forbidden Bethany Scaer from commemorating the 249th anniversary of the Battle of Bunker Hill by raising the Pine Tree Flag, a traditional patriotic flag flown by New England troops during the American Revolution. Likewise, officials have denied Beth's husband, Stephen Scaer, permission to raise a Detransitioner Awareness Flag to observe Detrans Awareness Day (March 12). Stephen[1] wishes to support gender detransitioners and call attention to the threats, ridicule, discrimination, and medical expenses that they often suffer, but city officials apparently do not want him to be allowed to express support for detransitioners.

Nashua's flag policy is unconstitutionally vague and overbroad, and it imposes an arbitrary prior restraint on use of the Citizen Flag Pole. The First Amendment does not allow municipalities to turn the government speech doctrine into a cover for favoring some private speakers and censoring others. Such viewpoint discrimination is anathema to the constitution. Plaintiffs Beth and Stephen Scaer are entitled to relief securing their fundamental right of free speech.

THE PARTIES

1.     Plaintiff Bethany R. Scaer is a natural person and a citizen of New Hampshire and the United States. She resides in Nashua and has resided in Nashua during all times relevant to her past actions mentioned in this complaint.

---

[1] Because Plaintiffs have the same surname, this complaint will refer to them as "Beth" and "Stephen" for the sake of clarity.

2.     Plaintiff Stephen Scaer is a natural person and a citizen of New Hampshire and the United States. He resides in Nashua and has resided in Nashua during all times relevant to his past actions mentioned in this complaint

3.     Defendant City of Nashua is a New Hampshire municipal corporation.

4.     Defendant James W. Donchess is the mayor of Nashua and has held that position during all times relevant to the events in this complaint. He is sued in his official and individual capacities.

5.     Defendant Jennifer L. Deshaies is Nashua's Risk Manager and has held that position during all times relevant to the events in this complaint. She is sued in her official and individual capacities.

JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action presents questions of federal law and challenges Defendants' violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983.

7.     Venue lies in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to the claims occurred and are occurring in this judicial district and because Defendants City of Nashua, Donchess, and Deshaies all reside in this district.

STATEMENT OF FACTS

*The Citizen Flag Pole*

8.     The City of Nashua, New Hampshire has four flag poles, of varying heights, in front of its city hall. Three are used by the city to display governmental flags, such as the American flag and the New Hampshire state flag. But the city permits people to apply to fly a flag of their own choosing on the fourth pole.

9.     Previously, Nashua's website referred to this fourth pole as the "Citizen Flag Pole." Exhibit A is a true and correct copy of Nashua's website page about the Citizen Flag Pole, as of October 11, 2020.

10.    Defendant Deshaies continued to refer to this pole as the "Citizen Flag Pole" (or "Citizen's Flag Pole") in correspondence with flag applicants as late as December 2023.

11.    Currently, Nashua's revised website refers to this pole as "[a] flag pole in front of City Hall." Exhibit B is a true and correct copy of Nashua's website page about the flag pole events, as of July 18, 2024. This page is also available at https://perma.cc/QU88-6UWY.

12.    Until May 2022, Nashua had no written policy governing what could be displayed on the Citizen Flag Pole. Those wishing to use the pole had to submit a Special Events Application to the Risk Manager, provide the physical flag themselves, pledge to abide by local ordinances, and agree to indemnify the city in the event of damage. The Risk Manager would then check to ensure that no one had already reserved the Citizen Flag Pole for the time period requested.

13.     Exhibit C is a true and correct copy of Special Events Procedures, as of October 12, 2020.

14.     On May 2, 2022, the U.S. Supreme Court unanimously decided *Shurtleff v. City of Boston*, 596 U.S. 243 (2022), holding that Boston violated the free speech rights of a Christian group when Boston denied the group's request to fly the Christian Flag on a pole at city hall. Like Nashua, Boston had no written policy about which flags were acceptable.

15.     On May 11, 2022—just a week after the *Shurtleff* decision—the City of Nashua issued a written flag policy on its website.

16.     Exhibit D is a true and correct copy of Nashua's flag pole policy. This policy, in full, states:

> A flag pole in front of City Hall may be provided for use by persons to fly a flag in support of cultural heritage, observe an anniversary, honor a special accomplishment, or support a worthy cause. Any group wishing to fly a flag must provide the flag. This potential use of a City flag pole is not intended to serve as a forum for free expression by the public. Any message sought to be permitted will be allowed only if it is in harmony with city policies and messages that the city wishes to express and endorse. This policy recognizes that a flag flown in front of City Hall will be deemed by many as City support for the sentiment thereby expressed, city administration reserves the right to deny permission or remove any flag it considers contrary to the City's best interest.
>
> For More Information
>
> For more information, please contact the Risk Management office at 603-589-3350.

17.     At this time, Nashua also revised its Special Events Procedures, to include a section on "Request[s] for Use of the City Flag Pole." Exhibit E is a true

and correct copy of Nashua's Special Events Procedures, as of July 18, 2024. The
revised Procedures are also available at https://perma.cc/VV5V-YTRK. The section
on the flag pole, in full, states:

> Requests to fly a flag shall be made to the Risk Manager or designee
> and will be evaluated in accordance with the City's flag pole policy.
> Applications shall include a photograph of the flag proposed and an
> explanation of the message intended to be conveyed. No single
> organization or agency shall monopolize the City flag pole.
>
> A. The Special Event Application (SEACH2022) should be completed in
> its entirety and shall be subject to review and approval of the Risk
> Manager. The Risk Manager reserves the right to decline any non-
> compliant application for use of the City flag pole for a given day or
> time period. The Applicant is to be notified as soon as a decision has
> been made.
>
> B. Any and all requests may be subject to cancellation, rescheduling or
> relocation by the Risk Manager on a forty-eight (48) hours' notice as
> necessary to accommodate the needs of the City's governing body. The
> Risk Manager shall make every effort to reschedule use of the City flag
> pole by the applicant for any time lost.

18.    Records disclosed by Nashua in response to requests under the New
Hampshire Right-to-Know Law show that both before and after the issuance of the
May 2022 policy, residents flew approximately ten flags a year on the Citizen Flag
Pole. Each flag usually flew for a week, from Saturday, Sunday, or Monday through
Friday.

19.    Short ceremonies at the City Hall Plaza often—but do not always—
accompany flag raisings. Local politicians sometimes attend or even speak at these
ceremonies. Politicians can use these ceremonies as an opportunity to interact with
flag-raising constituents and other attendees and passersby. If applicants wish to
hold a ceremony, they must describe the details of this ceremony (such as the

number of expected attendees and the extent to which it will obstruct the sidewalk) on their application.

20.    Many of the same groups apply to Nashua every year to fly a flag in celebration of an anniversary. For instance, both before and after the issuance of the May 2022 written policy, community groups regularly flew flags in honor of Pride Month, Indian Independence Day, Brazilian Independence Day, Greek Independence Day, International Francophonie Day, and the anniversary of the foundation of Nashua's Lions Club.

21.    Other flags have flown sporadically or just once. Examples include the Kurdistan Flag, the Christian Flag, the Luther Rose Flag, the Porcupine Flag, and flags in support of National Recovery Month and organ donation.

*Beth Scaer's Earlier Flag Applications*

22.    Since Nashua's flag program began in 2017, Plaintiff Beth Scaer has repeatedly applied to use the Citizen Flag Pole. Nashua approved some of her applications. In 2021, for instance, Beth was allowed to fly the Luther Rose Flag in April and a flag celebrating the ratification of the Nineteenth Amendment (women's suffrage) in August. In 2024, Beth and Stephen Scaer were part of a group that flew the Christian Flag during Holy Week.

23.    Nashua also refused to fly some of Beth's proposed flags. In 2020, for instance, Beth received permission to fly a Save Women's Sports flag for a week in October. On October 10, Beth and Stephen raised this flag together, using a tool

borrowed from the city, without a ceremony but with two other people in attendance, holding signs.

24.     Below is a photograph of the Save Women's Sports Flag.



25.     The city removed this Save Women's Sports Flag the following day, well before the end of its allotted week on the pole, after Alderwoman Jan Schmidt and various others complained that the flag was allegedly transphobic. The city bowed to the heckler's veto and censored Beth's political speech.

26.     Exhibit F is a true and correct copy of Alderwoman Schmidt's Facebook post about the Save Women Sport's Flag.

27.     Beth appealed this removal to Mayor Donchess, to no avail. According to Nashua's corporation counsel, "the previously granted permission was revoked" because Beth's flag "was outside of the parameters established for use of the citizen

flag pole." Nashua justified its action by citing *Shurtleff v. City of Boston*, 928 F.3d 166 (1st Cir. 2019)—a decision later reversed by the Supreme Court.

28.     Exhibit G is a true and correct copy of corporation counsel's response to Beth's appeal.

29.     In May 2022, soon after the Supreme Court's decision in *Shurtleff*, 596 U.S. 243, Beth applied a second time to fly the Save Women Sport's Flag. Defendant Deshaies—in her role as Nashua's Risk Manager—denied this application.

30.     From her personal knowledge and records disclosed in response to Right-to-Know requests, Beth understands that Nashua only refused to fly two flags prior to the issuance of the May 2022 flag policy. Those were the Save Women's Sports flag in October 2020, and a Porcupine Flag associated with both the Free State Project and the Libertarian Party, in February 2021. Nashua, however, allowed the Porcupine Flag to be flown on three other occasions.

31.     Since issuing the May 2022 flag policy, Nashua has refused to fly several other flags proposed by Nashua residents, including the Palestinian flag, a version of the Save Women's Sports flag that differed iconographically from Beth's, and the Pro-Life flag.

*The Detransitioner Awareness Flag Application*

32.     On February 7, 2024, Stephen Scaer applied to raise the Detransitioner Awareness Flag. Stephen sought to fly the flag for a week, to commemorate Detrans Awareness Day on March 12. He planned to organize a small flag-raising ceremony with only five people in attendance—none of whom would represent the city.

33.     Exhibit J is a true and correct copy of Stephen's Detransitioner Awareness Flag application and his correspondence with Defendants concerning this application.

34.     The Detransitioner Awareness Flag is a new flag, designed by a gender detransitioner, which depicts a blue-green lizard against a black background, with the words "De-Trans Awareness" at the bottom. This iconography was chosen because some lizards are able to lose parts of their body and survive to grow them back. The flag celebrates the bravery that gender detransitioners demonstrate, by enduring threats, ridicule, discrimination, and often painful and expensive medical care in order to live according to their biological sex.

35.     Below is a photograph of the Detransitioner Awareness Flag.



36.     On February 14, Defendant Deshaies denied Stephen's flag application because the Detransitioner Awareness Flag supposedly "is not in harmony with the message that the City wishes to express and endorse." Stephen appealed to the mayor's office. On March 4, Mayor Donchess upheld Deshaies' decision.

*The Pine Tree Flag Application*

37.     On May 27, 2024, Beth Scaer applied to fly the Pine Tree Flag on Saturday, June 15, to honor the Nashua soldiers who fought and died at the Battle of Bunker Hill. Because Bunker Hill occurred on June 17, 1775, Beth wished to commemorate the battle's 249th anniversary.

38.     Exhibit H is a true and correct copy of Beth's Pine Tree Flag application and her correspondence with Defendants concerning this application.

39.     The Pine Tree Flag is a traditional American emblem, carried by New England troops during the early years of the American Revolution, including at Bunker Hill. *See, e.g.*, JOHN R. VILE, THE AMERICAN FLAG: AN ENCYCLOPEDIA OF THE STARS AND STRIPES IN U.S. HISTORY, CULTURE, AND LAW 255 (2018); MARC LEEPSON, FLAG: AN AMERICAN BIOGRAPHY 13-15 (2005). This flag's origins go back at least to the 1772 Pine Tree Riot, a colonial uprising against unjust British taxation that occurred in Weare, New Hampshire. MICHAEL SHEA, IN GOD WE TRUST: GEORGE WASHINGTON AND THE SPIRITUAL DESTINY OF THE UNITED STATES OF AMERICA 71-74 (2012). Although the flag's iconography can differ, commonly it is a white flag, with a green pine tree in its center and the inscription "An Appeal to Heaven" above. *Leepson*, *supra* at 14-15. "An Appeal to Heaven" alludes to the political philosophy

of John Locke, who used this phrase to mean the freedom of the people to revolt

against a tyrant. *See* JOHN LOCKE, TWO TREATISES OF GOVERNMENT 379-80 (Peter

Laslett ed., 2016); VILE, *supra* at 255.

    40.    Below is a photograph of the Pine Tree Flag.



    41.    On May 29, Defendant Deshaies wrote Beth to say that the city was

denying her request. Deshaies justified this decision only briefly, by stating that

"[t]he flag is not in harmony with the message that the City wishes to express and

endorse. Therefore, we must deny your request as the flag poles are not intended to

serve as a forum for free expression by the public." This explanation is an almost

direct quote of Nashua's written flag policy.

    42.    A few days later, Beth appealed this decision to Mayor Donchess. Her

appeal, in part, stated:

> Nashua's brave soldiers fought and died at the Battle of Bunker Hill on June 17, 1775. I applied to raise the Pine Tree Flag, which our soldiers carried into battle that day, on the Nashua City Hall Plaza to commemorate this solemn anniversary. My request was rejected because the "flag is not in harmony with the message that the City wishes to express or endorse." The citizens of Nashua would be quite alarmed and ashamed to know that the City does not endorse the message of commemorating our soldiers fighting and dying at the Battle of Bunker Hill.

43.     On June 4, Mayor Donchess upheld Deshaies' decision, without additional explanation. As a result of Defendants' actions, Beth was not permitted to fly the Pine Tree Flag.

44.     On the days leading up to June 17, Beth emailed the mayor's office, her local alderman (Timothy Sennott), and various Nashua leaders and press outlets, to complain that the city was doing nothing to observe the anniversary of Bunker Hill and to remind them that June 17, 2025, next year, will be the battle's 250th anniversary.

45.     Alderman Sennott responded to Beth, to note that he had not been consulted or involved in any decisions regarding the Citizen Flag Pole, because the flag program operated out of the mayor's office exclusively. Exhibit I is a true and correct copy of Sennott's email.

*The Continuing Impact of Defendants' Actions on Plaintiffs*

46.     Plaintiffs Beth and Stephen Scaer intend to apply to fly additional flags on the Citizen Flag Pole, in order to express their views, whether Defendants Donchess and Deshaies or other political leaders in Nashua agree with their views or not.

47.     Indeed, Beth has already emailed Nashua leaders to remind them that June 17, 2025 will be the 250th anniversary of Bunker Hill. If permitted, Beth would fly the Pine Tree Flag then. She reasonably believes, however, that applying to fly the Pine Tree Flag on that day would be futile, because Defendants would deny her application just as they did this year.

48.     Beth and Stephen Scaer also reasonably expect to disagree with Defendants' views on issues such as gender-critical feminism, parental rights, women's sex-based rights, pediatric gender medicine, abortion, and the freedoms protected in the Bill of Rights. If permitted, they would express themselves through flags on these issues.

49.     If permitted, Beth and Stephen would both fly the Save Women's Sports Flag for the anniversary of Title IX next year. Similarly, Beth would fly the Pro-Life Flag for the anniversary of the Supreme Court's *Dobbs* decision next year. Plaintiffs reasonably believe that applying to Nashua to fly these flags would be futile, because Defendants have denied applications to fly these two flags in the past.

50.     If permitted, Stephen would fly the Detransitioner Awareness Flag next year during the week around Detrans Awareness Day. Stephen believes, however, that applying to fly the Detransitioner Awareness Flag again would be futile, because Defendants would deny the application, just as they did this year.

51.     Beth and Stephen Scaer cannot communicate through the Citizen Flag Pole as they intend, because Defendants interpret Nashua's flag pole policy to prohibit many of the flags that they wish to fly. Defendants have already used this

policy to justify refusing to fly flags such as the Pine Tree Flag, the Save Women's Sports Flag, the Detransitioner Awareness Flag, and the Pro-Life Flag.

52.    Although Defendants have allowed Beth and Stephen to fly some flags on the Citizen Flag Pole, they would express themselves more often and differently, if the Defendants did not refuse to permit flags expressing viewpoints that they find objectionable. Nashua's flag policy, both on its face and as applied by Defendants, limits the viewpoints that Plaintiffs can express, their choice of flags and iconographies, and the frequency of their expression.

53.    Plaintiffs find it frustrating and degrading to have their flag requests denied by the city, especially as other residents are allowed to promote viewpoints through flags. Flags expressing majoritarian opinions—and especially the opinions of Nashua's political leaders—are approved to fly while flags that express dissenting viewpoints, on both the right and the left, are rejected. Plaintiffs also find it frustrating and degrading that city officials refuse to explain why the Pine Tree Flag application and Detransitioner Awareness Flag application were really denied.

54.    Unless this Court grants relief, Beth and Stephan Scaer expect to make fewer or different flag applications to the city in the future, in order to avoid having their flag applications denied or revoked.

COUNT ONE
VIEWPOINT DISCRIMINATION, FACIALLY AND AS APPLIED
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

55.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 54.

56.     Plaintiffs have a First Amendment right to speak in both a limited public forum and a non-public forum, free from viewpoint discrimination. The history of the Citizen Flag Pole, the public's likely perception as to who speaks through the flags on the pole, and Nashua's lack of any direct control or active shaping of the messages conveyed in the flags all demonstrate that the Citizen Flag Pole constitutes a limited public forum for private speech by the general public. *See, e.g.*, *Shurtleff v. City of Bos.*, 596 U.S. 243, 252 (2022); *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 211-13 (2015).

57.     The Citizen Flag Pole is not an outlet for government speech, as Nashua's speech policy wrongly implies. "If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Matal v. Tam*, 582 U.S. 218, 235 (2017). Government speech doctrine cannot be "a subterfuge for favoring certain private speakers over others based on viewpoint." *Pleasant Grove City v. Summum*, 555 U.S. 460, 473 (2009); *see also Shurtleff v. City of Bos.*, 596 U.S. 243, 263 (2022) (Alito, J., concurring) (courts must "prevent the government-speech doctrine from being used as a cover for censorship").

58.     "Under the . . . First Amendment . . . government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). "[I]n a limited public forum, government '[c]ontrol over access to [the] forum can be based on subject matter and speaker identity so long as

the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'" *McBreairty v. Sch. Bd. of RSU22*, 616 F. Supp. 3d 79, 93 (D. Me. 2022) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985)). Likewise, access to a non-public forum can only be restricted "as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view." *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 97 (1st Cir. 2004) (cleaned up).

59. Nashua's written flag policy facially discriminates against speech that is not "in harmony with city policies and messages that the city wishes to express and endorse" or that officials "considers contrary to the City's best interest." The policy, however, contains no objective criteria for evaluating what speech is in harmony with the city's messages or what is in the city's interest. Defendants Donchess and Deshaies have applied this policy subjectively to Plaintiffs' proposed speech, by preventing them from flying the Pine Tree Flag and the Detransitioner Awareness Flag without any explanation of the rationale for these denials. Defendants' decisions about what flags can fly on the Citizen Flag Pole are neither reasonable nor viewpoint neutral.

60. By these actions, Defendants, under color of law, deprived and continue to deprive Plaintiffs of their right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and, therefore, are entitled to damages; declaratory and preliminary and permanent injunctive relief against continued

enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT TWO
PRIOR RESTRAINT – U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

61.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 60.

62.    Defendants impose a prior restraint on speech by preventing anyone from
flying a flag on the Citizen Flag Pole unless they first apply to the city and obtain endorsement of their viewpoint from city officials first. To be valid, prior restraints "have to contain narrow, objective, and definite standards to guide [officials] in their decision to approve or reject a [] propos[al]." *Asociacion de Educacion Privada de P.R., Inc. v. Garcia-Padilla*, 490 F.3d 1, 19 n.15 (1st Cir. 2007) (internal quotation marks omitted). For example, a hypothetical flag policy would be valid if it required an application simply so that the city could ensure that no one had already reserved the Citizen Flag Pole for the same time period.

63.    In contrast, Nashua's policy and practices constitute an unconstitutional prior restraint because they lack any standards. Permission to use the Citizen Flag Pole is left entirely to Defendants' unbridled discretion. Nashua's flag policy and practices fail to cabin official discretion and empower local partisan politicians to silence disfavor speech without any judicial oversight. *Cf. Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969).

64.    Defendants' practice of granting or denying flag applications based on subjective, unspecified criteria is an unconstitutional prior restraint. Their decisions to admit or to deny access to the Citizen Flag Pole is left entirely to their arbitrary,

18

unbridled discretion. Additionally, Defendants' practice is entirely bereft of procedural safeguards to ensure reviewable decisionmaking. Evidently, the mayor's office has power to grant or deny applications and to review appeals of its own decisions, without consulting or involving the Board of Aldermen or judiciary in any way.

65.    By imposing a prior restraint on Plaintiffs' political speech and thereby subjecting their access to the forum at Defendants' discretion, Defendants, under color of law, deprive Plaintiffs of their right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and, therefore, are entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT THREE
VAGUENESS AND EXCESSIVE ENFORCEMENT DISCRETION – SPEECH CODE, U.S.
CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

66.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 65.

67.    As notice is the first element of due process, and government officials require precise guidance so that they do not act in an arbitrary or discriminatory way, the Fourteenth Amendment guarantee of Due Process prohibits the enforcement of vague laws. The First Amendment also reflects these concerns, and likewise forbids the enforcement of laws that, however valid their application may be in some instances, are so vague as to chill protected speech. A law can be "impermissibly vague for either of two independent reasons. First, if it fails to

provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citation omitted).

68.    Defendants' prohibitions of flags whose message is not "in harmony with city policies and messages that the city wishes to express and endorse" and whose message "city administration . . . considers contrary to the City's best interest" is unduly vague and inherently subjective, serving only to authorize Defendants' arbitrary censorship of speech they dislike. This policy is unconstitutionally vague and gives excessive enforcement discretion to city leaders. *Cf. Minn. Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1891 (2018).

69.    By enforcing this flag policy, Defendants, under color of law, deprive Plaintiffs of their right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and, therefore, are entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT FOUR
OVERBREADTH – SPEECH CODE, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

70.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 69

71.    Speech regulations may not "sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama*, 377 U.S. 288, 307

20

(1964). "The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (internal quotation marks and citations omitted) (emphasis original).

72.     Defendants' policy and practices empower "city administration . . . to deny permission or remove any flag it considers contrary to the City's best interest." Defendants interpret this provision in a way that allows them to prevent any symbolic speech that would offend a large number of their Nashua constituents. Flags expressing popular or majoritarian opinions can be displayed while flags that express dissenting viewpoints, on both the right and the left, are forbidden. Defendants' policy violates the First Amendment right of free speech on its face because it is substantially overbroad, sweeping in vast amounts of protected political expression.

73.     By enforcing this flag policy, Defendants, under color of law, deprive Plaintiffs of their right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and, therefore, are entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. Orders preliminarily and permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from:

   a. Denying flag applications and preventing flags from being flown on the Citizen Flag Pole on the basis of viewpoint, including specifically the Pine Tree Flag, the Detransitioner Awareness Flag, and the Save Women's Sport's Flags;

   b. Enforcing those parts of Nashua's Flag Pole Policy that limit acceptable flags to those whose "message . . . is in harmony with city policies and messages that the city wishes to express and endorse" or that allow "city administration . . . to deny permission or remove any flag it considers contrary to the City's best interest"; and

   c. Denying or removing any flag because of a citizen complaint or is deemed to be offensive by city officials;

2. Declaratory relief consistent with the injunction, to the effect that:

   a. Denying flag applications and preventing flags from being flown on the Citizen Flag Pole on the basis of viewpoint violates the First Amendment right of freedom of speech; and

> b. Those parts of Nashua's Flag Pole Policy that limit acceptable flags to those whose "message . . . is in harmony with city policies and messages that the city wishes to express and endorse" or that allow "city administration . . . to deny permission or remove any flag it considers contrary to the City's best interest" violate the First Amendment right to free speech, on its face and as applied against Plaintiffs, by impermissibly discriminating against speech on the basis of viewpoint and by establishing an arbitrary prior restraint; and also that these provisions are unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments;

3. An award of nominal damages from each Defendant to each Plaintiff in the amount of $17.91;

4. Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

5. Any other relief as the Court deems just and appropriate.

Dated: September 5, 2024                Respectfully submitted,

By:    /s/ Roy S. McCandless

Nathan Ristuccia*[2]                      Roy S. McCandless
Virginia Bar No. 98372                    New Hampshire Bar No. 11850
Endel Kolde*                              ROY S. MCCANDLESS, ESQ., PLLC
Washington Bar No. 25155                  125 North State Street
INSTITUTE FOR FREE SPEECH                 Concord, New Hampshire 03301
1150 Connecticut Avenue, N.W.             603.841.3671, Ext. 101
Suite 801                                 roysmccandless@gmail.com
Washington, DC 20036

---

[2] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).

23

202.301.3300
nristuccia@ifs.org
dkolde@ifs.org

* Application pro hac vice to be filed