UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| BETHANY R. SCAER and STEPHEN SCAER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF NASHUA, a Municipal Corporation,<br>JAMES W. DONCHESS, Mayor, City of Nashua, in<br>his official and individual capacities, and<br>JENNIFER L. DESHAIES, Risk Manager, City of<br>Nashua, in her official and individual capacities,<br><br>Defendants. | Civil Action No. 1:24-cv-00277-LM-TSM |

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' OPPOSITION TO THE PLAINTIFFS' MOTION FOR PRELMINARY INJUNCTION

NOW COME the Defendants, City of Nashua ("the City"), James W. Donchess, Mayor of the City of Nashua ("Mayor Donchess"), and Jennifer L. Deshaies, Risk Manager for the City of Nashua ("Deshaies") (collectively the "Defendants"), by and through counsel, who hereby submit this Memorandum of Law in support of their joint Opposition to the Plaintiffs' Motion for Preliminary Injunction. As grounds for this Opposition, the Defendants state that the City's 2022 Flagpole Policy complies with Supreme Court precedent and clearly provides the use of the flagpole is deemed to be government speech. As government speech is exempt from First Amendment scrutiny, the Plaintiffs, Bethany R. Scaer and Stephen Scaer (the "Plaintiffs" or the "Scaers") (1) have failed to demonstrate a likelihood of success on the merits; (2) have failed to demonstrate that they would incur irreparable harm; (3) have failed to demonstrate that the balance of hardships tips in the plaintiffs' favor; and (4) have failed to demonstrate that the requested relief will not harm the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Furthermore, the injunctive relief sought by the Plaintiffs is now moot due to the City implementing a new flagpole policy on October 7, 2024. See Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014).

## I.     **BACKGROUND**

In Shurtleff v. City of Boston, 596 U.S. 243 (2022), the plaintiff sued the City of Boston because it refused to allow the plaintiff to fly a Christian flag on a flagpole in front of Boston City Hall.  In finding that the City of Boston violated the plaintiff's First Amendment rights, the Supreme Court of the United States was critical of the City of Boston's criteria for raising a flag, finding that the criteria "do not suggest purposeful communication of a government message." Id. at 274, n.4. The Shurtleff Court cited in support of its conclusion the written policy of the City of San Jose, California which made clear that it wished to speak for itself by raising flags, by specifying that its "'flagpoles are not intended to serve as a forum for free expression by the public,'" and lists approved flags that may be flown "'as an expression of the City's official sentiments.'" Id. at 258-59.

In the wake of Shurtleff, the City of Nashua endeavored to follow the example of the City of San Jose that was approved by the Supreme Court, by crafting a written policy with criteria that made it clear that the City of Nashua was speaking for itself by raising flags ("the 2022 Flagpole Policy"). This policy stated as follows:

> A flag pole in front of City Hall may be provided for use by persons to fly a flag in support of cultural heritage, observe an anniversary, honor a special accomplishment, or support a worthy cause. Any group wishing to fly a flag must provide the flag. This potential use of a City flag pole is not intended to serve as a forum for free expression by the public. Any message sought to be permitted will be allowed only if it is in harmony with city policies and messages that the city wishes to express and endorse. This policy recognizes that a flag flown in front of City Hall will be deemed by many as City support for the sentiment thereby expressed, city administration

reserves the right to deny permission or remove any flag it considers
contrary to the City's best interest.

After this policy went into effect, and was posted on the City's website, the Plaintiffs applied to

have to have a "De-trans Awareness Flag" flown on March 12, 2024, and the "Appeal to Heaven

Flag" on June 17, 2024. Both applications were denied because the flags did not convey messages

that were in harmony with the City of Nashua's policies and messages that the City of Nashua

wishes to express and endorse. Approximately three months later, the Plaintiffs filed a Complaint

and Motion for Preliminary Injunction with this Court.

On October 7, 2024, during the pendency of this action, Mayor Donchess repealed the 2022

Flagpole Policy and any other previous policies related to the flagpoles outside City Hall. See

Exhibit A attached hereto. In place of these policies, Mayor Donchess signed a new City Hall

Flagpole Policy stating that "The flagpoles on city hall grounds shall henceforth be exclusively

controlled by city government. The city shall determine what flags will be flown and during what

time periods and does not seek input from other sources. The flagpoles are not public fora open to

others for expression but are solely for city government to convey messages it chooses." Id.

## II.  STANDARD

Plaintiffs seek an injunction to prevent the City from (1) denying flag applications on the

basis of viewpoint; (2) enforcing certain portions of the 2022 Flagpole Policy; and (3) denying and

removing flags because of citizen complaint or because deemed offensive. *See* ECF No. 2-14 at 1-

2. "A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of

right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012). Typically,

the purpose of a preliminary injunction is to "preserve the status quo, freezing an existing situation

so as to permit the trial court, upon full adjudication of the case's merits, more effectively to

remedy discerned wrongs." CMM Cable Rep. Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 620

(1st Cir. 1995). But here, instead of a "traditional, prohibitory preliminary injunction," Plaintiffs seek a "mandatory preliminary injunction" that "alters rather than preserves the status quo" by forcing the City to change its actions. Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 40-41 (1st Cir. 2010). "[M]andatory injunctions are disfavored," and so the Plaintiffs "must make an even stronger showing of entitlement to relief than is typically required." *Thomas v. Warden*, 596 F. Supp. 3d 331, 336-37 (D.N.H. 2022) (cleaned up).

To obtain a preliminary injunction, Plaintiffs must establish (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of a preliminary injunction, (3) the balance of hardships tips in their favor, and (4) public interest favors an injunction. Winter v. Nat. Res. Def. Cncl., Inc., 555 U.S. 7, 20 (2008). Of these, likelihood of success on the merits and irreparable injury are the most important factors. Tirrell v. Edelblut, ___ F. Supp. 3d ___, 2024 WL 4132435, *1 (D.N.H. Sept. 10, 2024). Likelihood of success on the merits is the "*sine qua non*" of the four-part inquiry, and if the Plaintiffs fail to "establish a strong likelihood that they will ultimately prevail" on the merits, the Court need not reach the other three parts of the inquiry. See, e.g., Shurtleff v. City of Boston, 928 F.3d 166, 170-71 (1st Cir. 2019) (denying preliminary injunction based upon determination that Plaintiff was unlikely to succeed on the merits). As for the latter two preliminary injunction factors, because the defendants in this matter are government entities or officials sued in their official capacities, the balance of equities and the public interest factors merge. Tirrell, 2024 WL 4132435, at *1.

### III.   ARGUMENT

**A. The Plaintiffs have failed to demonstrate that they are likely to succeed on the merits.**

    **i.   All of Plaintiffs' claims fail because the flags raised outside of City Hall are government speech outside the purview of the Free Speech Clause.**

A plaintiff moving for preliminary injunction "must show not that it is merely theoretically possible that he prevails, but that there is a 'strong likelihood' he does so." Id. While this Court may find that the Scaers' First Amendment claims "are sufficient to proceed beyond the motion to dismiss stage, it does not inevitably follow . . . [that these claims have] a strong likelihood of success." Id. (citing Billups v. City of Charleston, 194, F.Supp.3d 452, 478 (D.S.C. 2016)).

> When the government encourages diverse expression—say, by creating a forum for debate—the First Amendment prevents it from discriminating against speakers based on their viewpoint. But when the government speaks for itself, the First Amendment does not demand airtime for all views. After all, the government must be able to promote a program or espouse a policy in order to function.

Shurtleff v. City of Boston, 596 U.S. at 248. "Government speech is exempt from First Amendment scrutiny." Carroll v. Craddock, 494 F.Supp.3d 158, 165 (D.R.I. 2020) (citing Matal v. Tam, 582 U.S. 218, 234 (2017) ("[T]he Free Speech Clause . . . does not regulate government speech.").

Accordingly, if the Court determines that the speech in question here is government speech, all of Plaintiff's First Amendment claims must fail. The fact that private citizens participated in determining what flags to fly under the 2022 Flagpole Policy does not undermine the notion that the flags flown outside City Hall are government speech. "[T]he government can 'adop[t]' a medium of expression created by a private party and use it to express a government message." Id. at 270 (quoting Pleasant Grove City v. Summum, 555, U.S. 460, 473-474 (2009). "In that circumstance, private parties generate[] a medium of expression and transfers it to the government." Id. (citing Summum at 472-474). An expression is adopted by the government when the private party alienates control over the medium of expression to the government, and government actors put the medium to use to intentionally express a government message. Id.

Plaintiffs have failed to establish a "strong likelihood" that the speech at issue is private, not governmental. In order to determine whether the government is speaking for itself, Courts engage in "a holistic inquiry" scrutinizing three main factors: "the history of the expression at issue; the public's likely perception as to who is speaking; and the extent to which the government has actively shaped or controlled the expression." Id. at 252.

First, with regard to the history of the expression at issue, the Plaintiffs repeatedly mention the history of the flagpole—but Plaintiffs conspicuously focus only on the history of the flagpole *before* Shurtleff was decided in 2022 and *before* the City adopted the 2022 Flagpole Policy at the heart of this matter. When Shurtleff was decided, the state of the law regarding whether flags flown in front of a government building constitute government speech was clarified. The Supreme Court of the United States made it clear that in order for government speech to be applicable, a written policy with criteria akin to the City of San Jose, California needed to be implemented. Id. at 258. Thus, the City promptly enacted the 2022 Flag Pole Policy. Plaintiffs emphasize that, prior to 2022, the City was more permissive in allowing individuals to fly flags. ECF No. 2 at 15, 28 ("[U]ntil October 2020, the City never rejected a proposed flag and . . ., until May 2022, the city had no written flag policy."). But the fact that the City has exerted more control over the flagpoles since the enactment of the 2022 Flagpole Policy actually demonstrates that the policy marked a change in the characteristics of the flags flown outside City Hall—if the flags flown were once private speech, as of 2022, the City clearly claimed them as its own speech. As of October 7, 2024, private citizens are no longer allowed to participate at all in flying flags. The speech at issue here is purely governmental.

Second, the Plaintiffs offer no evidence whatsoever that the public perceives flags flown in front of Nashua City Hall as being private speech. Common sense would dictate the opposite. After all, any flag flown in front of City Hall is on City property.

Finally, since <u>Shurtleff</u> was decided, the City has controlled what flags are flown in front of City Hall through the criteria in its written policy. In arguing to the contrary, Plaintiffs emphasize that under the 2022 Flagpole Policy, the City would not even review an application to fly a flag unless the applicant submitted a photograph of their flag and an explanation of the flag's message. <u>See</u> ECF No. 2 at 17-18. Plaintiffs have unwittingly made the Defendants' point: The City imposed exacting requirements on applicants, and the City could and did reject applications that did not meet these requirements or the criteria set forth in the 2022 Flagpole Policy.

As evidence that flags flown on the poles outside City Hall are private speech, the Plaintiffs point out that the City has allowed religious flags to fly. The Plaintiffs assert that, if the flags were government speech, this would violate the Establishment Clause.[1] This argument is unpersuasive, as the City may acknowledge religious movements without necessarily endorsing them. <u>See</u> <u>Lynch v. Donnelly</u>, 465 U.S. 668, 679-680 (1984) (concluding that although a crèche displayed by the city was itself religious, the fact that it was located in a broader holiday display clarified to the reasonable observer that the city was, as part of the holiday, simply acknowledging religion with the crèche and not endorsing it.).  The Plaintiffs provide other examples where the City has allowed flags to fly that, when raised by private citizens, are accompanied by speeches that are critical of

---

[1] For this proposition, Plaintiffs cite to <u>Freedom from Religion Foundation v. Hanover School District</u>, 626 F.3d 1 (1st Cir. 2010), wherein the First Circuit determined that the Government may not "coerce" anyone to support or participate in religion. This Court should decline the invitation to litigate a hypothetical Establishment Clause case. But, in any case, <u>Freedom from Religion Foundation</u> is inapposite where, here, City policy is clear that the flags it flies are not intended to promote any given movement, but to "support [] cultural heritage, observe an anniversary, honor a special accomplishment, or support a worthy cause."

the City. See ECF No. 2 at 18. These arguments are mere deflection, focusing on the speeches of private citizens instead of the issue at hand, the flags the City has approved to be raised.

In summary, the facts demonstrate that the 2022 Flagpole Policy made any flag that the City agrees to raise on its flagpole government speech. The character of the flags outside City Hall as governmental has been further cemented by the 2024 Flagpole policy. The Plaintiffs' Motion must be denied on this basis alone. However, even if an analysis of the four counts in the Plaintiffs' Complaint is required, the City is still likely to prevail.

### ii. __The Plaintiffs are unlikely to succeed on each count of their Complaint.__

Even if this Court were to determine that the City's flag raising policy is not government speech, the Plaintiffs' claims are still unlikely to succeed on the merits. "First Amendment claims proceed in a three-step analysis. First, [it must be determined] whether the Plaintiff[s'] activity 'is speech protected by the First Amendment.'" McBreairty v. Sch. Bd. of RSU 22, 616 F. Supp. 3d 79, 89 (D. Me. 2022) (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797 (1985)). Second, "the nature of the forum [must be identified] 'because the extent to which the Government may limit access depends on whether the forum is public or nonpublic.'" Id. Third, "'the justifications for exclusion from the relevant forum [must] satisfy the requisite standard.'" Id.

"Nothing in the Constitution requires the Government to freely grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." Porter v. City of Phila., 975 F.3d 374, 382 (2020) (quoting Cornelius, 473 U.S. at 799-800).

> When it comes to First Amendment free speech challenges, not every public property is the same, and different types of property will require different treatment. There are three types of protected forums for speech occurring on government owned or controlled

> property. The type of forum in which the relevant speech takes place
> determines the contours of the First Amendment rights that a court
> recognizes when reviewing the challenged governmental action.

Id. at 386.

> A nonpublic forum is entitled to lesser First Amendment protection
> than the other two forums. Accordingly, the government is allowed
> much more flexibility to craft rules limiting speech. The government
> may reserve such a forum for its intended purposes, communicative
> or otherwise, as long as the regulation on speech is reasonable and
> not an effort to suppress expression merely because public officials
> oppose the speaker's view. Content-based restrictions on speech are
> valid so long as they are reasonable in light of the purpose of the
> forum and viewpoint neutral.

Id. at 387. "In a nonpublic forum, the government need only draw a reasonable line and be able

to articulate some sensible basis for distinguishing what may come in from what must stay out."

Id. at 388.

### a. **The Plaintiffs have not demonstrated a likelihood of success on the merits as to their first count.**

In their first count, the Plaintiffs allege that the 2022 Flagpole Policy regarding the raising

of flags on a flagpole in front of Nashua City Hall was viewpoint discrimination. See ECF No. 1

at ¶¶ 55-60. Viewpoint discrimination is a form of censorship where the government targets not

just the subject matter of communication, but particular views taken on a subject. Rosenberger v.

Rector & Visitors of Univ. of Va., 515 U.S. 819, 828-29 (1995). This claim must be analyzed with

a view toward the type of forum—public, limited, or nonpublic. The flagpoles outside of City Hall

are a nonpublic forum, and thus the City may engage in reasonable (viewpoint-neutral) exclusion

of speakers who would disrupt the purpose of the flagpole. Cornelius v. NAACP Legal Def. &

Educ. Fund, Inc., 473 U.S. 788, 808-11 (1985). Plaintiffs have mistaken the City's reasonable

restrictions aimed at protecting the purpose of its nonpublic forum for viewpoint discrimination.

Public forums and limited public forums exist where the government has intentionally designated places or means of communication as public. Id. at 800. Nonpublic forums, by contrast, are those wherein the government has made no such designation. See id. Notably, whether a forum is a public, limited, or nonpublic forum has largely been a function of what the government has designated a particular forum. Private persons may be provided access to a nonpublic forum by the government because it believes they will further the goals the government uses the property to serve. See, e.g., Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 133 (1977). Access to a nonpublic forum can be restricted as long as the restrictions are "reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." Cornelius, 473 U.S. at 800. Nonpublic forums are generally designated for special purposes, so distinctions between speakers that "relate to the special purpose for which the property is used" generally "are inherent and inescapable in the process of limiting the nonpublic forum to activities compatible with the intended purpose of the property." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 49 (1983). "The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves." Id.

Since the Shurtleff decision was issued in 2022, the City of Nashua has not held out its flagpoles as a public forum. The City's 2022 Flagpole Policy specifically states that "[t]his potential use of a City flag pole is *not* intended to serve as a forum for free expression by the public." (Emphasis added.) As such, under that policy, the City's flagpoles were a nonpublic forum (and continue to be so under the 2024 City Hall Flagpole Policy). Thus, the City needed only to "draw a reasonable line" and "articulate some reasonable basis" for what it would permit to be raised under the 2022 Flagpole Policy. Porter, 975 F.3d at 388. It has done so. Despite the Plaintiffs

10

assertions to the contrary, the Defendants did not discriminate on the basis of their viewpoint. The City's 2022 Flagpole Policy specifies that flags could be permitted that "support . . . cultural heritage, observe an anniversary, honor a special accomplishment, or support a worthy cause," and explicitly states:

> This policy recognizes that a flag flown in front of City Hall will be deemed by many as City support for the sentiment thereby expressed, city administration reserves the right to deny permission or remove any flag it considers *contrary to the City's best interest*.

ECF No. 1 at ¶ 16. The City made a permissible, reasonable determination that the flags sought to be flown by Plaintiffs did not meet the purposes of the nonpublic forum and were contrary to the City's best interest.

Raising a flag in support of "De-trans Awareness Day" does not comport with the purpose of the nonpublic forum set forth in the 2022 Flagpole Policy. "De-trans Awareness Day" is not a holiday recognized by the United States government or the State of New Hampshire. "De-trans Awareness Day" is not an accomplishment akin to a local sports team that just won a championship. And it is not akin to a longstanding charity such as the Jimmy Fund, or the Make A Wish Foundation. Moreover, the City may have recognized that the danger of controversy or unrest outweighed the flags' tendency to support any particular cause. Under such circumstances, it was reasonable for the City to determine that flying the flag would not promote the purpose of the forum and not serve the City's best interest.

Similarly, raising the "Appeal to Heaven" flag does not comport with the purpose of the nonpublic forum set forth in the 2022 Flagpole Policy. While this flag may have its origins dating back to the Battle of Bunker Hill, it has recently become a symbol of far-right politics. See AJ Willingham, THE HISTORY BEHIND THE CONTROVERSIAL 'APPEAL TO HEAVEN' FLAG, May 31, 2024 (https://www.cnn.com/2024/05/31/us/appeal-to-heaven-flag-meaning-cec/index.html).    Indeed,

Courts have recognized that symbols, such as a flag, can adopt different meanings to different people, and that meaning may change over time. For example, in <u>Summum</u>, the Supreme Court of the United States said:

> The meaning conveyed by a monument is generally not a simple one like "'Beef. It's What's for Dinner." Even when a monument features the written word, the monument may be intended to be interpreted, and may in fact be interpreted by different observers, in a variety of ways.
>
> . . .
>
> [T]ext-based monuments are almost certain to evoke different thoughts and sentiments in the minds of different observers, and the effect of monuments that do not contain text is likely to be even more variable.
>
> . . .
>
> [I]t frequently is not possible to identify a single "message" that is conveyed by an object or structure, and consequently, the thoughts or sentiments expressed by a government entity that accepts and displays such an object may be quite different from those of either its creator or its donor.
>
> . . .
>
> [Moreover,] [t]he "message" conveyed by a monument may change over time.

<u>Id</u>. at 474-77. As such, due to its misappropriation, the "Appeal to Heaven" flags' primary purpose is no longer to support cultural heritage, observe an anniversary, honor a special accomplishment, or support a worthy cause. Also, like the "De-trans Awareness Day" flag, it is possible that the City made the judgment call that the controversy or unrest that would result from flying the flag would overshadow the flag's tendency to support any particular cause. Under such circumstances, flying the flag would not further the purpose of the forum and would not be in the City's best interest.

The City's decision to not fly these flags is reasonable because the flags do not comport with the purpose of the nonpublic forum set forth in the 2022 Flagpole Policy. There are reasonable, articulable bases for denying the applications to fly Plaintiffs' flags that are not viewpoint discriminatory. In a nonpublic forum, that is enough. Therefore, the Plaintiffs have not demonstrated a likelihood that they would prevail on their first count.

### b. **The Plaintiffs have not demonstrated a likelihood of success on the merits as to their second count.**

In their second count, the Plaintiffs allege that because the City has adopted a written policy regarding the use of the flagpole, it has imposed a prior restraint on speech, which is impermissible because the policy "lacks any standards." ECF No. 1 at ¶¶ 61-65. The Plaintiffs also argue that the City's policy must have three procedural safeguards, set forth in Freedman v. Maryland: "that prior restraints may be imposed only temporarily; that they must allow for prompt judicial review; and that the licensor must bear the burden of asking a court to suppress the speech." New Eng. Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 21 (1st Cir. 2002) (quoting Freedman v. Maryland, 380 U.S. 51, 58-60 (1965)); ECF No. 2 at 22-23.

In the present matter, there is no prior restraint on private speech, because the City's flag raising policy is government speech. However, even if the City's flag raising policy were not government speech, there is still no prior restraint because the City's flagpole in front of Nashua City Hall is a nonpublic forum. The policies justifying restrictions on prior restraints are at their weakest if the forum in question is nonpublic. See Forsyth County v. Nationalist Movement, 505 U.S. 123, 123 (1992) ("[An] ordinance requiring a permit and a fee before authorizing public speaking, parades, or assemblies in 'the archetype of a traditional public forum,' is a prior restraint on speech." (quoting Frisby v. Schultz, 487 U.S. 474, 480 (1988)); Thomas v. Chicago Park Dist., 534 U.S. 316 (2002) (holding that a content-neutral permitting scheme that regulates uses of a

public forum need not contain the procedural safeguards described in <u>Freedman</u> because it "does not raise the censorship concerns" present in other contexts). A nonpublic forum must be able to impose reasonable limitations upon speech, including through reasonable prior restraints aimed at promoting the purpose of the forum. See <u>New Eng. Reg'l Council of Carpenters</u>, 284 F.3d at 23. That is why, in <u>New England Regional Council of Carpenters</u>, the Supreme Court upheld a total ban on leafletting in a particular nonpublic forum. <u>See id</u>. The 2022 Flag Policy was narrower and more parameters explicitly aimed at promoting its purposes than the ban upheld in that matter.

<b>c.      The Plaintiffs have not demonstrated a likelihood of success on the merits as to their third count.</b>

In the Plaintiffs third count, they allege that the City's "prohibition of flags whose message is not 'in harmony with city policies and messages that the city wishes to express and endorse'" is "unconstitutionally vague." ECF No. 1 at ¶¶ 66-69.  The legal basis for this argument is that the First and Fourteenth Amendment prohibit the enforcement of vague *laws*. ECF No. 2 at 24 (citing <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108 (1972). The problem with the Plaintiffs' position here is that the City's 2022 Flagpole Policy was not a *law* but rather an internal *policy*. The vagueness doctrine is intended to protect individuals from unknowingly running afoul of the law where the law fails to put them on notice of what activities are prohibited. <u>See</u> <u>Kovacs v. Cooper</u>, 336 U.S. 77, 79 (1949) (upholding statute over vagueness challenge where it was "conveys to an interested person a sufficiently accurate concept of what is forbidden"). This concern is not at play where, as is the case here, there is no possibility that an individual could violate the City's 2022 Flagpole Policy unknowingly—they would not be permitted to fly the flag in the first place—and violation of the policy does not constitute a violation of the law.

Even if the legal analysis articulated in the Plaintiffs' Complaint were applicable, the City's policy is not unconstitutionally vague. Regulations on expression are not void because they are

"flexible" and "the officials implementing them will exercise considerable discretion." <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 794 (1989). "[P]erfect clarity and precise guidance have never been required." <u>Id</u>. As stated above, the proposed flag to be raised must be "in support of cultural heritage, observe an anniversary, honor a special accomplishment, or support a worthy cause" and must be in "harmony with city policies and messages that the city wishes to express and endorse." A person of "ordinary intelligence [has] a reasonable opportunity to understand what [the City's flagpole policy] prohibits," and the 2022 Flagpole Policy does not "encourage arbitrary, discriminatory enforcement." <u>Hill v. Colorado</u>, 530 U.S. 703, 732 (2000) (citation omitted). Thus, the 2022 Flagpole Policy is not vague and the Plaintiffs have not demonstrated a likelihood that they would prevail on their third count.

### d. **The Plaintiffs have not demonstrated a likelihood of success on the merits as to their fourth count.**

The fourth count alleges that the 2022 Flagpole Policy violates the First Amendment because it is "substantially overbroad, sweeping in vast amounts of protected political expression." ECF No. 1 at ¶¶ 70-73. Again, this argument is inapplicable to an internal policy rather than a law. But, in any case, a law may be invalidated on its face only if the overbreadth is substantial. <u>Houston v. Hill</u>, 482 U.S. 451, 458-59 (1987). An overbreadth analysis requires a two-step approach. First, a court must determine the scope of the allegedly overbroad law. <u>United States v. Hansen</u>, 599 U.S. 762, 770 (2023). Next, the Court "is to decide which of the law['s] applications violate the First Amendment, and to measure them against the rest." <u>Moody v. NetChoice, LLC</u>, Docket No. 22-277, 603 U.S. __ (July 1, 2024) (slip op. at 11). Any hypothetical unconstitutional applications "must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." <u>Hansen</u>, 599 U.S. at 770 (citing <u>N.Y. State Club Ass'n., Inc.</u>, 487 U.S. at 14. If there has been insufficient material presented to the Court to make

these determinations, then the law is not unconstitutionally overbroad. Moody, 603 U.S. at ____ (slip op. at 12). "The requirement that the overbreadth be substantial arose from [the] recognition that application of the overbreadth doctrine is, manifestly, strong medicine, and that there must be a realistic danger that the [law] itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Board of Airport Commissioners of City of Los Angeles v. Jews For Jesus, Inc., 482 U.S. 569, 574 (1987) (citations omitted).

When Courts consider the overbreadth doctrine as it applies to the First Amendment, the mere fact that a plaintiff "can conceive of some impermissible applications of [the] statute is not sufficient to render it [unconstitutional.]" United States v. Williams, 553 U. S. 285, 303 (2008). "The overbreadth claimant bears the burden of demonstrating 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." Virginia v. Hicks, 539 U.S. 113, 122 (2003) (quoting New York State Club Assn., Inc. v. City of New York, 487 U.S. 1, 14 (1988)).  Due to the "substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech," the challenged law's application to protected speech must be "substantial" both "in an absolute sense" and "relative to the scope of the law's plainly legitimate applications." Id. at 119-120.

Again, the issue before this Court involves a *policy* not a *law*. However, even if the 2022 Flag Pole Policy is subject to the overbreadth doctrine, it is apparent that the City's policy is not *substantially* overbroad. The Plaintiffs argue that the 2022 Flagpole Policy "sweeps in vast amounts of protected expression" because it "unconstitutionally restricts so-called offensive speech and gives political majorities a heckler's veto over minority, dissenting views." ECF No. 2 at 26. As an initial matter, Plaintiffs provide no "actual fact" to support that contention, resting on

unfounded assumptions that the City's 2022 Flagpole Policy was a "subterfuge" for favoring certain causes. Virginia, 539 U.S. at 122; ECF No. 2 at 14. Additionally, Plaintiffs do not compare any such restrictions on speech with the policy's plainly legitimate applications. As discussed above, the flags flown outside of City Hall constitute government speech and the 2022 Flagpole Policy provides the government a degree of necessary control over the messages it conveys. Even if the flag poles were not government speech, they are a nonpublic forum, and the 2022 Flagpole Policy served the important role of distinguishing between speakers whose causes advanced the purpose of the nonpublic forum and those whose did not. In this context, there are innumerable legitimate reasons for denying access to the nonpublic forum that vastly outweigh any burden on "unpopular" or "offensive" messaging. Therefore, the policy is not overbroad, and the Plaintiffs have not demonstrated a likelihood that they would prevail on their fourth count.

**B.   The Plaintiffs have not demonstrated that they will suffer irreparable harm.**

In their Motion, the Plaintiffs claim that "Injunctive relief is required to address the irreparable injury that [they] presently suffer." ECF No. 2 at 27. The injunctive relief laid out in Plaintiffs' Proposed Order has three paragraphs, which would enjoin the City from: (1) denying citizens' applications to fly flags based upon viewpoint; (2) enforcing certain parts of the 2022 Flagpole Policy; and (3) denying or removing any flags because of citizen complaint or because a flag is deemed offensive by city officials. ECF No. 2-14 at 1-2. The first two of these center on how the City evaluates citizens' applications to fly flags outside of City Hall. As of October 7, 2024, however, the 2022 Flagpole Policy has been repealed and the City will no longer accept citizen input about what flags to fly. The first two paragraphs of the injunction will, therefore, have no effect.

Unlike the other two paragraphs of the Proposed Order, the third paragraph will have an impact notwithstanding the repeal of the 2022 Flagpole Policy. If the Proposed Order is issued, the City will be prevented from removing *any* flags from its flag poles based upon citizen complaint or because the City determines the flag is offensive. ECF No. 2-14 at 2. As discussed below, this would be an untenable restriction on the City's ability to moderate its own speech. Additionally, it would do nothing to protect the Plaintiffs or the public from harm; no one except the City will be flying flags at City Hall going forward, so no one's First Amendment rights will be burdened if the City decides to take down its flags based upon citizen complaint or to avoid offending others.

The Plaintiffs' claim of irreparable harm is also belied by their delay in bringing suit. "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." Doe, 597, F. Supp. At 515 (quoting Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985)). "If [a plaintiff] were genuinely at risk of irreparable harm, he presumably would not have assented to waiting almost two months for the preliminary injunction hearing." Id. at 515; Morales-Narvaez v. Rosello, 65 F.3d 160 (1st Cir. 1995) (finding that there was no irreparable harm incurred by the appellants because they waited three months before filing their Complaint.).

In the present matter, the Plaintiffs waited several months after their applications to raise the "De-Trans Awareness Flag" and "Appeal to Heaven Flag" were denied to file a Complaint. The latter of the two applications was denied on May 29, 2024; this suit was not filed until September 6, 2024. See ECF No. 1 at ¶ 41.  This belies the Plaintiffs' argument that they have

suffered irreparable harm. No irreparable harm has been suffered here, nor will the requested injunction prevent future irreparable harm, and the Plaintiffs' Motion must fail as a result.

**C.  The Plaintiffs have failed to demonstrate that the balance of hardships tips in their favor or that a preliminary injunction would support the public interest.**

Here, the Defendants in this matter are government entities or officials, and thus the balance of equities and the public interest factors merge, as the public interest is inherently affected when a government policy is at issue. Tirrell, 2024 WL 4132435, at *1. The Court must evaluate whether the "relative cost" to the Plaintiffs if the requested injunction does not issue outweighs the harm that will be caused to the City if it does issue. See Johnson v. Collins, 233 F.Supp.2d, 241, 252 (D.N.H. 2002).

As discussed in the previous section, the Plaintiffs will not be harmed if an injunction is issued because, however the Court rules, the 2022 Flagpole Policy will no longer be enforced and the Plaintiffs will no longer have an opportunity to apply to fly flags at City Hall. On the other hand, the City will be significantly harmed if the requested injunction issues.  Specifically, Paragraph 3 of the Proposed Order would prevent the City from removing flags based upon citizen complaint or because those flags are deemed offensive. If the City were to decide under the new policy to fly a particular flag between now and the conclusion of this lawsuit, it would have no ability to remove that flag on the bases set forth in Paragraph 3. The City must be able to control what it communicates on the flagpole. Shurtleff, 596 U.S. at 251. If it does not, its function is impaired. See id. That impairment is a harm that outweighs the impact the Plaintiffs will feel (if any) should their request for an injunction be denied.

**D.  The injunctive relief sought by the Plaintiffs is now moot.**

The Plaintiffs Motion must be denied because the relief sought is now moot.  "The Constitution 'confines the jurisdiction of the federal courts to actual cases and controversies.'"

Ford, 768 F.3d at 29 (quoting Barr v. Galvin, 626 F.3d 99, 104 (1st Cir.2010); See U.S. Const.

Art. III, § 2. "'A case generally becomes moot when the controversy is no longer live or the

parties lack a legally cognizable interest in the outcome.'" Id. (quoting Shelby v. Superformance

Int'l, Inc., 435 F.3d 42, 45 (1st Cir. 2006)).  "Events subsequent to a district court's entry of

judgment may render a case moot and preclude appellate review of the merits." Id. (citing

Libertarian Party of N.H. v. Gardner, 638 F.3d 6, 12 (1st Cir. 2011)).

On October 7, 2024, the City adopted a new policy relative to flagpoles in front of City

Hall, which reads:

> The flagpoles on City Hall grounds shall henceforth be exclusively
> controlled by City government.  The City shall determine what flags
> will be flown and during what time periods and does not seek input
> from other sources.  The flagpoles are not public fora open to others
> for expression, but are solely for City government to convey
> messages it chooses.
>
> All previous policies related to flagpoles on City Hall grounds are
> hereby repealed.

Now that the City has a new policy making it abundantly clear that none of the flagpoles are  a

public forum and that only the City government my use them, the relief that the Plaintiffs are

seeking "is no longer live."  Shelby, 435 F.3d at 45.  Therefore, the Plaintiffs' Motion must be

denied.

## IV.    CONCLUSION

In summary, the Plaintiffs have failed to demonstrate (1) that they are likely to succeed on

the merits; (2) that they have suffered irreparable harm; (3) that the balance of hardships tips in

their favor; and (4) that the general public would be adversely affected. Furthermore, the injunctive

relief sought by the Plaintiffs is not moot due to the City implementing a new flagpole policy on

October 7, 2024. Therefore, the Plaintiffs' Motion for Preliminary Injunction must be denied.

WHEREFORE, the Defendants respectfully request that this Honorable Court:

A) DENY the Plaintiffs' Motion for Preliminary Injunction and

B) GRANT and further relief that is deemed just and proper.

Respectfully submitted,

City of Nashua, Defendant
By its attorneys,

James W. Donchess, Defendant
By his attorneys

/s/ Jonathan A. Barnes
Steven A. Bolton, Esq. (NH Bar #67)
Celia K. Leonard, Esq. (NH Bar #14574)
Jonathan A. Barnes, Esq. (NH Bar #20061)
City of Nashua
Office of Corporation Counsel
229 Main Street, P.O. Box 2019
Nashua, NH 03061-2019
(603) 589-3250
boltons@nashuanh.gov
leonardc@nashuanh.gov
barnesj@nashuanh.gov

/s/ Michael A. Pignatelli
Michael A. Pignatelli (NH Bar #2026)
Adam B. Pignatelli (NH Bar #20211)
Rath, Young, and Pignatelli, P.C.
20 Trafalgar Square, Suite 307
Nashua, NH 02063
(603) 889-9952
map@rathlaw.com
abp@rathlaw.com

Jennifer L. Deshaies, Defendant
By her attorneys,

/s/ Peter G. Callaghan
Peter G. Callaghan, Esq. (NH Bar #6811)
Kat Mail, Esq. (NH Bar #274914)
Preti Flaherty, PLLP
P.O. Box 1318
Concord, NH 03302-1318
(603) 410-1500
pcallaghan@preti.com
kmail@preti.com

Dated: October 10, 2024

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has this day been forwarded through the Court's electronic filing system to Bethany R. Scaer and Stephen Scaer and to all counsel of record.

/s/ Jonathan A. Barnes_____
Jonathan A. Barnes