UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

BETHANY R. SCAER and STEPHEN SCAER,

Plaintiffs,

v.

CITY OF NASHUA, a Municipal Corporation,
JAMES W. DONCHESS, Mayor, City of Nashua, in
his official and individual capacities, and
JENNIFER L. DESHAIES, Risk Manager, City of
Nashua, in her official and individual capacities,

Defendants.

Civil Action No. 1:24-cv-00277-LM-TSM

<u>**THE DEFENDANTS, CITY OF NASHUA AND JENNIFER L. DESHAIES'S JOINT
ANSWER AND AFFIRMATIVE DEFENSES TO THE PLAINTIFFS' COMPLAINT**</u>

NOW COMES the City of Nashua (the "City") and Jennifer L. Deshaies ("Deshaies")
(collectively the "Defendants"), two of the Defendants in the above-captioned matter, by and
through counsel, and by way of Answer states as follows:

**INTRODUCTION**

The Plaintiffs' introduction is filled with irrelevant and self-serving conclusory
statements. As such, no response to this section is necessary. To the extent that this Court
deems a response to the introduction is necessary, it is denied as phrased.

**PARTIES**

1. Plaintiff Bethany R. Scaer is a natural person and a citizen of New Hampshire and the United
   States. She resides in Nashua and has resided in Nashua during all times relevant to her past
   actions mentioned in this complaint.

ANSWER:    Admitted.

2. Plaintiff Stephen Scaer is a natural person and a citizen of New Hampshire and the United States. He resides in Nashua and has resided in Nashua during all times relevant to his past actions mentioned in this complaint.

ANSWER:     Admitted.

3. Defendant City of Nashua is a New Hampshire municipal corporation.

ANSWER:     Admitted.

4. Defendant James W. Donchess is the mayor of Nashua and has held that position during all times relevant to the events in this complaint. He is sued in his official and individual capacities.

ANSWER:     Admitted that James W. Donchess ("Mayor Donchess") is the mayor of Nashua and that he is sued in his official capacity.  Denied that James W. Donchess' involvement in this matter was in his personal capacity. Plaintiffs have voluntarily dismissed their claims against Donchess and Deshaies in their individual capacities.

5. Defendant Jennifer L. Deshaies is Nashua's Risk Manager and has held that position during all times relevant to the events in this complaint. She is sued in her official and individual capacities.

ANSWER:     Admitted that Jennifer L. Deshaies is Nashua's Risk Manager and that she is sued in her official capacity.  Denied that Jennifer L Deshaies' involvement in this matter was in her personal capacity. Plaintiffs have voluntarily dismissed their claims against Donchess and Deshaies in their individual capacities.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action presents questions of federal law and challenges Defendants' violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983.

ANSWER:  Admitted.

7. Venue lies in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to the claims occurred and are occurring in this judicial district and because Defendants City of Nashua, Donchess, and Deshaies all reside in this district.

ANSWER: Admitted.

## STATEMENT OF FACTS

8. The City of Nashua, New Hampshire has four flag poles, of varying heights, in front of its city hall. Three are used by the city to display governmental flags, such as the American flag and the New Hampshire state flag. But the city permits people to apply to fly a flag of their own choosing on the fourth pole.

ANSWER:      Admitted that the City has three flag poles in front of City Hall that display governmental flags.  Denied that the City has a fourth flagpole and permits people to apply to fly a flag of their own choosing on the fourth flagpole.  By way of further answer, the City amended its flagpole policy on October 7, 2024 making it abundantly clear that the flagpoles are owned and controlled by the City, that they are not a public fora, and that the flagpoles are not for use by the citizens of Nashua.

9. Previously, Nashua's website referred to this fourth pole as the "Citizen Flag Pole." Exhibit A is a true and correct copy of Nashua's website page about the Citizen Flag Pole, as of October 11, 2020.

ANSWER:      Admitted that the City's website previously referred to the fourth flagpole in front of City Hall as a Citizen Flag Pole prior to <u>Shurtleff v. City of Boston</u>, 596 U.S. 243 (2022), and prior to the City creating a written policy for using the fourth flagpole in 2021.[1]

10. Defendant Deshaies continued to refer to this pole as the "Citizen Flag Pole" (or "Citizen's Flag Pole") in correspondence with flag applicants as late as December 2023.

ANSWER:      Admitted that on one occasion Ms. Deshaines mistakenly referred to the fourth flagpole in front of Nashua City Hall as the "Citizen Flag Pole" after the City instituted its new policy in 2022 but otherwise denied as phrased.

11. Currently, Nashua's revised website refers to this pole as "[a] flag pole in front of City Hall." Exhibit B is a true and correct copy of Nashua's website page about the flag pole events, as of July 18, 2024. This page is also available at https://perma.cc/QU88-6UWY.

ANSWER:      Admitted that Exhibit B depicts the City's website as of July 18, 2024 but denied that this remains an accurate depiction of the City's website.   By way of further Answer the City amended its flagpole policy on October 7, 2022 making it abundantly clear that the flagpoles are owned and controlled by the City, that they are not a public fora, and that the flagpoles are not for use by the citizens of Nashua.

12. Until May 2022, Nashua had no written policy governing what could be displayed on the Citizen Flag Pole. Those wishing to use the pole had to submit a Special Events Application to the Risk Manager, provide the physical flag themselves, pledge to abide by local ordinances, and agree to indemnify the city in the event of damage. The Risk Manager would

---

[1] Throughout the Complaint, Plaintiffs refer to the fourth flagpole in front of City Hall in Nashua as "the Citizen Flag Pole." The Defendants deny that this is an accurate characterization of the fourth flagpole outside of City Hall. However, for the purposes of this Answer, Defendants have not endeavored to correct every instance of the Plaintiffs' use of the phrase.

then check to ensure that no one had already reserved the Citizen Flag Pole for the time

period requested.

ANSWER:     Denied.

13. Exhibit C is a true and correct copy of Special Events Procedures, as of October 12, 2020.

ANSWER:     Admitted that the Special Events Procedures as of October 12, 2020 are depicted

in Plaintiffs' Exhibit C.

14.   On May 2, 2022, the U.S. Supreme Court unanimously decided Shurtleff v. City of Boston,

      596 U.S. 243 (2022), holding that Boston violated the free speech rights of a Christian group

      when Boston denied the group's request to fly the Christian Flag on a pole at city hall. Like

      Nashua, Boston had no written policy about which flags were acceptable.

ANSWER:     The first sentence of paragraph 14 is admitted but the second sentence is denied.

15. On May 11, 2022—just a week after the Shurtleff decision—the City of Nashua issued a

    written flag policy on its website.

ANSWER:     Admitted that an updated written policy was added on the City's website shortly

after the Shurtleff decision was issued.

16. Exhibit D is a true and correct copy of Nashua's flag pole policy. This policy, in full, states:

> A flag pole in front of City Hall may be provided for use by persons
> to fly a flag in support of cultural heritage, observe an anniversary,
> honor a special accomplishment, or support a worthy cause. Any
> group wishing to fly a flag must provide the flag. This potential use
> of a City flag pole is not intended to serve as a forum for free
> expression by the public. Any message sought to be permitted will
> be allowed only if it is in harmony with city policies and messages
> that the city wishes to express and endorse. This policy recognizes
> that a flag flown in front of City Hall will be deemed by many as
> City support for the sentiment thereby expressed, city administration
> reserves the right to deny permission or remove any flag it considers
> contrary to the City's best interest.
>
> For More Information

> For more information, please contact the Risk Management office
> at 603-589-3350.

ANSWER:     Admitted that this is an accurate transcription of the 2022 Flagpole Policy, but

denied that the 2022 Flagpole Policy is still in effect.

17. At this time, Nashua also revised its Special Events Procedures, to include a section on

"Request[s] for Use of the City Flag Pole." Exhibit E is a true and correct copy of Nashua's

Special Events Procedures, as of July 18, 2024. The revised Procedures are also available at

https://perma.cc/VV5V-YTRK. The section on the flag pole, in full, states:

> Requests to fly a flag shall be made to the Risk Manager or designee
> and will be evaluated in accordance with the City's flag pole policy.
> Applications shall include a photograph of the flag proposed and an
> explanation of the message intended to be conveyed. No single
> organization or agency shall monopolize the City flag pole.
>
> A.  The Special Event Application (SEACH2022) should be
>     completed in its entirety and shall be subject to review and
>     approval of the Risk Manager. The Risk Manager reserves the
>     right to decline any non-compliant application for use of the City
>     flag pole for a given day or time period. The Applicant is to be
>     notified as soon as a decision has been made.
>
> B.  Any and all requests may be subject to cancellation,
>     rescheduling or relocation by the Risk Manager on a forty-eight
>     (48) hours' notice as necessary to accommodate the needs of the
>     City's governing body. The Risk Manager shall make every
>     effort to reschedule use of the City flag pole by the applicant for
>     any time lost.

ANSWER:     Admitted.

18. Records disclosed by Nashua in response to requests under the New Hampshire Right-to-

Know Law show that both before and after the issuance of the May 2022 policy, residents

flew approximately ten flags a year on the Citizen Flag Pole. Each flag usually flew for a

week, from Saturday, Sunday, or Monday through Friday.

ANSWER: Admitted that approximately ten flags are flown on the fourth flagpole in front of City Hall per year.  Denied that the City still refers to this flagpole as the Citizen Flag Pole.

19. Short ceremonies at the City Hall Plaza often—but do not always—accompany flag raisings. Local politicians sometimes attend or even speak at these ceremonies. Politicians can use these ceremonies as an opportunity to interact with flag-raising constituents and other attendees and passersby. If applicants wish to hold a ceremony, they must describe the details of this ceremony (such as the number of expected attendees and the extent to which it will obstruct the sidewalk) on their application.

ANSWER:     Admitted.

20. Many of the same groups apply to Nashua every year to fly a flag in celebration of an anniversary. For instance, both before and after the issuance of the May 2022 written policy, community groups regularly flew flags in honor of Pride Month, Indian Independence Day, Brazilian Independence Day, Greek Independence Day, International Francophonie Day, and the anniversary of the foundation of Nashua's Lions Club.

ANSWER:     Admitted that some, but not all, flags flown on the fourth flag pole were requested by community groups in celebration of an anniversary, including several of those listed, but the remaining allegations in Paragraph 20 of the Complaint are denied.

21. Other flags have flown sporadically or just once. Examples include the Kurdistan Flag, the Christian Flag, the Luther Rose Flag, the Porcupine Flag, and flags in support of National Recovery Month and organ donation.

ANSWER: Admitted that these flags were flown prior the City instituting its current written policy in 2024.

22. Since Nashua's flag program began in 2017, Plaintiff Beth Scaer has repeatedly applied to use the Citizen Flag Pole. Nashua approved some of her applications. In 2021, for instance, Beth was allowed to fly the Luther Rose Flag in April and a flag celebrating the ratification of the Nineteenth Amendment (women's suffrage) in August. In 2024, Beth and Stephen Scaer were part of a group that flew the Christian Flag during Holy Week.

ANSWER:     Admitted that the City approved some of Beth Scaer's applications prior to instituting its written policy in 2022 following <u>Shurtleff</u> and prior to its current written policy, but the remaining allegations in Paragraph 22 of the Complaint are denied.

23. Nashua also refused to fly some of Beth's proposed flags. In 2020, for instance, Beth received permission to fly a Save Women's Sports flag for a week in October. On October 10, Beth and Stephen raised this flag together, using a tool borrowed from the city, without a ceremony but with two other people in attendance, holding signs.

ANSWER:      Admitted that the City has refused some of Beth Scaer's applications prior to instituting its written policy in 2022 following <u>Shurtleff</u> and prior to its current written policy but the remaining allegations in Paragraph 23 of the Complaint are denied.

24. Below is a photograph of the Save Women's Sports Flag.

ANSWER:     The flag speaks for itself and therefore a response is not required.  To the extent that this Court requires a response, admitted that this is a flag that Beth Scaer attempted to fly in front of Nashua City Hall.

25. The city removed this Save Women's Sports Flag the following day, well before the end of its allotted week on the pole, after Alderwoman Jan Schmidt and various others complained that the flag was allegedly transphobic. The city bowed to the heckler's veto and censored Beth's political speech.

ANSWER:      Admitted that this flag was lowered after the City learned the flag was raised on

the wrong pole and after Alderwoman Jan Schmidt and others complained that the flag was

transphobic.  Denied that the City bowed to a heckler's veto.  Denied that the City censored Beth

Scaer's political speech.

26. Exhibit F is a true and correct copy of Alderwoman Schmidt's Facebook post about the Save

    Women Sport's Flag.

ANSWER:      The Defendants lack sufficient information or belief to admit or deny the

allegations in Paragraph 26 of the Complaint and thus deny same, putting Plaintiffs to their

proof.

27. Beth appealed this removal to Mayor Donchess, to no avail. According to Nashua's

    corporation counsel, "the previously granted permission was revoked" because Beth's flag

    "was outside of the parameters established for use of the citizen flag pole." Nashua justified

    its action by citing Shurtleff v. City of Boston, 928 F.3d 166 (1st Cir. 2019)—a decision later

    reversed by the Supreme Court.

ANSWER:      Admitted that Beth Scaer's appeal was denied.  Admitted that the Office of

Corporation Counsel informed Beth Scaer that her flag was outside of the parameters for use of

the City's flagpole. Admitted that the City relied in part upon First Circuit law at the time which

was later amended by the United States Supreme Court's decision in Shurtleff. All remaining

allegations are denied.

28. Exhibit G is a true and correct copy of corporation counsel's response to Beth's appeal.

ANSWER:      Admitted that this was the Office of Corporation Counsel's response to Beth

Scaer's appeal.

29. In May 2022, soon after the Supreme Court's decision in <u>Shurtleff</u>, 596 U.S. 243, Beth

   applied a second time to fly the Save Women Sport's Flag. Defendant Deshaies—in her role

   as Nashua's Risk Manager—denied this application.

ANSWER:     Admitted.

30. From her personal knowledge and records disclosed in response to Right-to-Know requests,

   Beth understands that Nashua only refused to fly two flags prior to the issuance of the May

   2022 flag policy. Those were the Save Women's Sports flag in October 2020, and a

   Porcupine Flag associated with both the Free State Project and the Libertarian Party, in

   February 2021. Nashua, however, allowed the Porcupine Flag to be flown on three other

   occasions.

ANSWER:     The Defendants lack sufficient information or belief to admit or deny the

allegations in Paragraph 30 of the Complaint as to what Beth Scaer understands, and thus deny

same, putting Plaintiffs to their proof.

31. Since issuing the May 2022 flag policy, Nashua has refused to fly several other flags

   proposed by Nashua residents, including the Palestinian flag, a version of the Save Women's

   Sports flag that differed iconographically from Beth's, and the Pro-Life flag.

ANSWER:     Admitted that since <u>Shurtleff</u> was decided in 2022 and the City adopted a new

policy following that decision, the City has not allowed flags to be flown on the fourth flagpole

in front of Nashua City Hall if they do not comport with the City's current written policy,

including the flags identified in Paragraph 31 of the Complaint.

32. In February 7, 2024, Stephen Scaer applied to raise the Detransitioner Awareness Flag.

   Stephen sought to fly the flag for a week, to commemorate Detrans Awareness Day on

March 12. He planned to organize a small flag-raising ceremony with only five people in

attendance—none of whom would represent the city.

ANSWER:     The first sentence is admitted, and the Defendants lack sufficient information or

belief to admit or deny the remaining allegations in Paragraph 32 of the Complaint, and thus

deny same, putting Plaintiffs to their proof.

33. Exhibit J is a true and correct copy of Stephen's Detransitioner Awareness Flag application

and his correspondence with Defendants concerning this application.

ANSWER:     Admitted that Exhibit J contains some of the correspondence concerning the

application.

34. The Detransitioner Awareness Flag is a new flag, designed by a gender detransitioner, which

depicts a blue-green lizard against a black background, with the words "De-Trans

Awareness" at the bottom. This iconography was chosen because some lizards are able to

lose parts of their body and survive to grow them back. The flag celebrates the bravery that

gender detransitioners demonstrate, by enduring threats, ridicule, discrimination, and often

painful and expensive medical care in order to live according to their biological sex.

ANSWER:     The Defendants lack sufficient information or belief to admit or deny the

allegations in Paragraph 34 of the Complaint, and thus deny same, putting Plaintiffs to their

proof.

35. Below is a photograph of the Detransitioner Awareness Flag.

ANSWER:     Admitted that this is a flag that Stephen Scaer attempted to fly in front of Nashua

City Hall.

36. On February 14, Defendant Deshaies denied Stephen's flag application because the

Detransitioner Awareness Flag supposedly "is not in harmony with the message that the City

wishes to express and endorse." Stephen appealed to the mayor's office. On March 4, Mayor

Donchess upheld Deshaies' decision.

ANSWER:     Admitted.

37. On May 27, 2024, Beth Scaer applied to fly the Pine Tree Flag on Saturday, June 15, to

honor the Nashua soldiers who fought and died at the Battle of Bunker Hill. Because Bunker

Hill occurred on June 17, 1775, Beth wished to commemorate the battle's 249th anniversary.

ANSWER:     Admitted that Beth Scaer filed an application to raise the Pine Tree Flag, but the

Defendants lack sufficient information or belief to admit or deny the remaining allegations in

Paragraph 37 of the Complaint, and thus deny same, putting Plaintiffs to their proof.

38. Exhibit H is a true and correct copy of Beth's Pine Tree Flag application and her

correspondence with Defendants concerning this application.

ANSWER:     Admitted.

39. The Pine Tree Flag is a traditional American emblem, carried by New England troops during

the early years of the American Revolution, including at Bunker Hill. *See, e.g.*, JOHN R.

VILE, THE AMERICAN FLAG: AN ENCYCLOPEDIA OF THE STARS AND STRIPES

IN U.S. HISTORY, CULTURE, AND LAW 255 (2018); MARC LEEPSON, FLAG: AN

AMERICAN BIOGRAPHY 13-15 (2005). This flag's origins go back at least to the 1772

Pine Tree Riot, a colonial uprising against unjust British taxation that occurred in Weare,

New Hampshire. MICHAEL SHEA, IN GOD WE TRUST: GEORGE WASHINGTON

AND THE SPIRITUAL DESTINY OF THE UNITED STATES OF AMERICA 71-74

(2012). Although the flag's iconography can differ, commonly it is a white flag, with a green

pine tree in its center and the inscription "An Appeal to Heaven" above. *Leepson*, *supra* at

14-15. "An Appeal to Heaven" alludes to the political philosophy of John Locke, who used

this phrase to mean the freedom of the people to revolt against a tyrant. *See* JOHN LOCKE,

TWO TREATISES OF GOVERNMENT 379-80 (Peter Laslett ed., 2016); VILE, *supra* at

255.

ANSWER:     The literature cited by the Plaintiffs in their Complaint speaks for itself.  Denied

that the Pine Tree Flag connotes the meaning articulated in this literature in the present day.

40. Below is a photograph of the Pine Tree Flag.

ANSWER:     Admitted that this is a flag that Beth Scaer attempted to fly in front of Nashua

City Hall.

41. On May 29, Defendant Deshaies wrote Beth to say that the city was denying her request.

Deshaies justified this decision only briefly, by stating that "[t]he flag is not in harmony with

the message that the City wishes to express and endorse. Therefore, we must deny your

request as the flag poles are not intended to serve as a forum for free expression by the

public." This explanation is an almost direct quote of Nashua's written flag policy.

ANSWER:     Admitted that Ms. Deshaies wrote a letter communicating the application was

denied and that the letter cited to the written policy then in effect.

42. A few days later, Beth appealed this decision to Mayor Donchess. Her appeal, in part, stated:

> Nashua's brave soldiers fought and died at the Battle of Bunker Hill on June 17, 1775. I applied to raise the Pine Tree Flag, which our soldiers carried into battle that day, on the Nashua City Hall Plaza to commemorate this solemn anniversary. My request was rejected because the "flag is not in harmony with the message that the City wishes to express or endorse." The citizens of Nashua would be quite alarmed and ashamed to know that the City does not endorse the message of commemorating our soldiers fighting and dying at the Battle of Bunker Hill.

ANSWER:     Admitted that this was the gist of Beth Scaer's appeal.

43. On June 4, Mayor Donchess upheld Deshaies' decision, without additional explanation. As a result of Defendants' actions, Beth was not permitted to fly the Pine Tree Flag.

ANSWER:     Admitted.

44. On the days leading up to June 17, Beth emailed the mayor's office, her local alderman (Timothy Sennott), and various Nashua leaders and press outlets, to complain that the city was doing nothing to observe the anniversary of Bunker Hill and to remind them that June 17, 2025, next year, will be the battle's 250th anniversary.

ANSWER:     The Defendants lack sufficient information to either admit or deny the allegations in Paragraph 44 of the Complaint, and thus deny same, putting Plaintiffs to their proof.

45. Alderman Sennott responded to Beth, to note that he had not been consulted or involved in any decisions regarding the Citizen Flag Pole, because the flag program operated out of the mayor's office exclusively. Exhibit I is a true and correct copy of Sennott's email.

ANSWER:     The Defendants lack sufficient information to either admit or deny the allegations in Paragraph 45 of the Complaint, and thus deny same, putting Plaintiffs to their proof.

46. Plaintiffs Beth and Stephen Scaer intend to apply to fly additional flags on the Citizen Flag Pole, in order to express their views, whether Defendants Donchess and Deshaies or other political leaders in Nashua agree with their views or not.

ANSWER:     The Defendants lack sufficient information to either admit or deny the allegations in Paragraph 46 of the Complaint, and thus deny same, putting Plaintiffs to their proof.

47. Indeed, Beth has already emailed Nashua leaders to remind them that June 17, 2025 will be the 250th anniversary of Bunker Hill. If permitted, Beth would fly the Pine Tree Flag then. She reasonably believes, however, that applying to fly the Pine Tree Flag on that day would be futile, because Defendants would deny her application just as they did this year.

ANSWER:      Admitted that Beth Scaer has emailed Nashua officials to remind them that June 17, 2025 will be the 250th anniversary of the Battle of Bunker Hill.  The Defendants lack sufficient information to either admit or deny the remaining allegations in Paragraph 47 of the Complaint, and thus deny same, putting Plaintiffs to their proof.

48. Beth and Stephen Scaer also reasonably expect to disagree with Defendants' views on issues such as gender-critical feminism, parental rights, women's sex-based rights, pediatric gender medicine, abortion, and the freedoms protected in the Bill of Rights. If permitted, they would express themselves through flags on these issues.

ANSWER:      The Defendants lack sufficient information to either admit or deny the allegations in Paragraph 48 of the Complaint, and thus deny same, putting Plaintiffs to their proof.

49. If permitted, Beth and Stephen would both fly the Save Women's Sports Flag for the anniversary of Title IX next year. Similarly, Beth would fly the Pro-Life Flag for the anniversary of the Supreme Court's Dobbs decision next year. Plaintiffs reasonably believe that applying to Nashua to fly these flags would be futile, because Defendants have denied applications to fly these two flags in the past.

ANSWER:      The Defendants lack sufficient information to either admit or deny the allegations in Paragraph 49 of the Complaint, and thus deny same, putting Plaintiffs to their proof.

50. If permitted, Stephen would fly the Detransitioner Awareness Flag next year during the week around Detrans Awareness Day. Stephen believes, however, that applying to fly the Detransitioner Awareness Flag again would be futile, because Defendants would deny the application, just as they did this year.

ANSWER:      The Defendants lack sufficient information to either admit or deny the allegations in Paragraph 50 of the Complaint, and thus deny same, putting Plaintiffs to their proof.

51. Beth and Stephen Scaer cannot communicate through the Citizen Flag Pole as they intend, because Defendants interpret Nashua's flag pole policy to prohibit many of the flags that they wish to fly. Defendants have already used this policy to justify refusing to fly flags such as the Pine Tree Flag, the Save Women's Sports Flag, the Detransitioner Awareness Flag, and the Pro-Life Flag.

ANSWER:    The Defendants admit that some applications to raise flags including those listed have been denied pursuant to the 2022 policy but deny the remaining allegations in Paragraph 51 of the Complaint.

52. Although Defendants have allowed Beth and Stephen to fly some flags on the Citizen Flag Pole, they would express themselves more often and differently, if the Defendants did not refuse to permit flags expressing viewpoints that they find objectionable. Nashua's flag policy, both on its face and as applied by Defendants, limits the viewpoints that Plaintiffs can express, their choice of flags and iconographies, and the frequency of their expression.

ANSWER:    Denied.

53. Plaintiffs find it frustrating and degrading to have their flag requests denied by the city, especially as other residents are allowed to promote viewpoints through flags. Flags expressing majoritarian opinions—and especially the opinions of Nashua's political leaders—are approved to fly while flags that express dissenting viewpoints, on both the right and the left, are rejected. Plaintiffs also find it frustrating and degrading that city officials refuse to explain why the Pine Tree Flag application and Detransitioner Awareness Flag application were really denied.

ANSWER:    The Defendants lack sufficient information to either admit or deny the allegations in the first and third sentences of Paragraph 53 of the Complaint, and thus deny same, putting

Plaintiffs to their proof. The Defendants admit that some flag applications have been approved under the 2022 policy while others have been denied, but deny the remaining allegations in the second sentence of Paragraph 53 of the Complaint.

54. Unless this Court grants relief, Beth and Stephan Scaer expect to make fewer or different flag applications to the city in the future, in order to avoid having their flag applications denied or revoked.

ANSWER:     The Defendants lack sufficient information to either admit or deny the allegations in Paragraph 54 of the Complaint, and thus deny same, putting Plaintiffs to their proof.

**COUNT ONE**
**VIEWPOINT DISCRIMINATION, FACIALLY AND AS APPLIED**
**U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983**

55. Plaintiffs reallege and incorporate by reference paragraphs 1 through 54.

ANSWER:     The Defendants incorporate their responses to the previous paragraphs as if more fully realleged herein.

56. Plaintiffs have a First Amendment right to speak in both a limited public forum and a non-public forum, free from viewpoint discrimination. The history of the Citizen Flag Pole, the public's likely perception as to who speaks through the flags on the pole, and Nashua's lack of any direct control or active shaping of the messages conveyed in the flags all demonstrate that the Citizen Flag Pole constitutes a limited public forum for private speech by the general public. See, e.g., Shurtleff v. City of Bos., 596 U.S. 243, 252 (2022); Walker v. Tex. Div., Sons of Confederate Veterans, Inc., 576 U.S. 200, 211-13 (2015).

ANSWER:     Denied as phrased.

57. The Citizen Flag Pole is not an outlet for government speech, as Nashua's speech policy wrongly implies. "If private speech could be passed off as government speech by simply

affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." <u>Matal v. Tam</u>, 582 U.S. 218, 235 (2017). Government speech doctrine cannot be "a subterfuge for favoring certain private speakers over others based on viewpoint." <u>Pleasant Grove City v. Summum</u>, 555 U.S. 460, 473 (2009); <u>see</u> <u>also</u> <u>Shurtleff v. City of Bos.</u>, 596 U.S. 243, 263 (2022) (Alito, J., concurring) (courts must "prevent the government-speech doctrine from being used as a cover for censorship").

ANSWER:   Denied.

58. "Under the . . . First Amendment . . . government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." <u>Police Dep't of Chicago v. Mosley</u>, 408 U.S. 92, 96 (1972). "[I]n a limited public forum, government '[c]ontrol over access to [the] forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'" <u>McBreairty v. Sch. Bd. of RSU22</u>, 616 F. Supp. 3d 79, 93 (D. Me. 2022) (quoting <u>Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.</u>, 473 U.S. 788, 806 (1985)). Likewise, access to a non-public forum can only be restricted "as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view." <u>Ridley v. Mass. Bay Transp. Auth.</u>, 390 F.3d 65, 97 (1st Cir. 2004) (cleaned up).

ANSWER:   The Defendants deny any allegation that is inaccurate or inconsistent with the cited cases..

59. Nashua's written flag policy facially discriminates against speech that is not "in harmony with city policies and messages that the city wishes to express and endorse" or that officials "considers contrary to the City's best interest." The policy, however, contains no objective

criteria for evaluating what speech is in harmony with the city's messages or what is in the city's interest. Defendants Donchess and Deshaies have applied this policy subjectively to Plaintiffs' proposed speech, by preventing them from flying the Pine Tree Flag and the Detransitioner Awareness Flag without any explanation of the rationale for these denials. Defendants' decisions about what flags can fly on the Citizen Flag Pole are neither reasonable nor viewpoint neutral.

ANSWER:    Denied.

60. By these actions, Defendants, under color of law, deprived and continue to deprive Plaintiffs of their right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and, therefore, are entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

ANSWER:    Denied.

## COUNT TWO
## PRIOR RESTRAINT – U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

61. Plaintiffs reallege and incorporate by reference paragraphs 1 through 60.

ANSWER:    The Defendants incorporate their responses to the previous paragraphs as if more fully realleged herein.

62. Defendants impose a prior restraint on speech by preventing anyone from flying a flag on the Citizen Flag Pole unless they first apply to the city and obtain endorsement of their viewpoint from city officials first. To be valid, prior restraints "have to contain narrow, objective, and definite standards to guide [officials] in their decision to approve or reject a [] propos[al]." Asociacion de Educacion Privada de P.R., Inc. v. Garcia-Padilla, 490 F.3d 1, 19 n.15 (1st

19

Cir. 2007) (internal quotation marks omitted). For example, a hypothetical flag policy would be valid if it required an application simply so that the city could ensure that no one had already reserved the Citizen Flag Pole for the same time period.

ANSWER:     The first sentence of Paragraph 62 is denied. The Defendants deny any allegation that is inaccurate or inconsistent with the cited case.

63. In contrast, Nashua's policy and practices constitute an unconstitutional prior restraint because they lack any standards. Permission to use the Citizen Flag Pole is left entirely to Defendants' unbridled discretion. Nashua's flag policy and practices fail to cabin official discretion and empower local partisan politicians to silence disfavor speech without any judicial oversight. Cf. Shuttlesworth v. Birmingham, 394 U.S. 147, 151 (1969).

ANSWER:     The allegations in Paragraph 63 are denied. The Defendants deny any allegation that is inaccurate or inconsistent with the cited case.

64. Defendants' practice of granting or denying flag applications based on subjective, unspecified criteria is an unconstitutional prior restraint. Their decisions to admit or to deny access to the Citizen Flag Pole is left entirely to their arbitrary, unbridles discretion. Additionally, Defendants' practice is entirely bereft of procedural safeguards to ensure reviewable decision making. Evidently, the mayor's office has power to grant or deny applications and to review appeals of its own decisions, without consulting or involving the Board of Aldermen or judiciary in any way.

ANSWER:     Denied.

65. By imposing a prior restraint on Plaintiffs' political speech and thereby subjecting their access to the forum at Defendants' discretion, Defendants, under color of law, deprive Plaintiffs of their right to free speech in violation of the First and Fourteenth Amendments to

the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and, therefore, are entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

ANSWER:     Denied.

## COUNT THREE
## VAGUENESS AND EXCESSIVE ENFORCEMENT DISCRETION – SPEECH CODE, U.S.CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

66. Plaintiffs reallege and incorporate by reference paragraphs 1 through 65.

ANSWER:     The Defendants incorporate their responses to the previous paragraphs as if more fully realleged herein.

67. As notice is the first element of due process, and government officials require precise guidance so that they do not act in an arbitrary or discriminatory way, the Fourteenth Amendment guarantee of Due Process prohibits the enforcement of vague laws. The First Amendment also reflects these concerns, and likewise forbids the enforcement of laws that, however valid their application may be in some instances, are so vague as to chill protected speech. A law can be "impermissibly vague for either of two independent reasons. First, if it fails to conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000) (citation omitted).

ANSWER:     The First Amendment, the Fourteenth Amendment, and the Hill decision speak for themselves and therefore no response is required. Defendants deny any allegation that is inaccurate or inconsistent with the cited case and constitutional provision, and deny any violation.

21

68. Defendants' prohibitions of flags whose message is not "in harmony with city policies and
    messages that the city wishes to express and endorse" and whose message "city
    administration . . . considers contrary to the City's best interest" is unduly vague and
    inherently subjective, serving only to authorize Defendants' arbitrary censorship of speech
    they dislike. This policy is unconstitutionally vague and gives excessive enforcement
    discretion to city leaders. Cf. Minn. Voters Alliance v.Mansky, 138 S. Ct. 1876, 1891 (2018).

ANSWER:      The allegations in Paragraph 68 of the Complaint are denied. Defendants deny

any allegation that is inaccurate or inconsistent with the cited case.

69. By enforcing this flag policy, Defendants, under color of law, deprive Plaintiffs of their right
    to free speech in violation of the First and Fourteenth Amendments to the United States
    Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and, therefore, are
    entitled to damages; declaratory and preliminary and permanent injunctive relief against
    continued enforcement and maintenance of Defendants' unconstitutional customs, policies,
    and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

ANSWER:      Denied.

### COUNT FOUR
### OVERBREADTH – SPEECH CODE, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

70. Plaintiffs reallege and incorporate by reference paragraphs 1 through 69.

ANSWER:      The Defendants incorporate their responses to the previous paragraphs as if more

fully realleged herein.

71. Speech regulations may not "sweep unnecessarily broadly and thereby invade the area of
    protected freedoms." NAACP v. Alabama, 377 U.S. 288, 307 (1964). "The showing that a
    law punishes a substantial amount of protected free speech, judged in relation to the statute's
    plainly legitimate sweep, suffices to invalidate *all* enforcement of that law, until and unless a

limiting construction or partial invalidation so narrows it as to remove the seeming threat or

deterrence to constitutionally protected expression." <u>Virginia v. Hicks</u>, 539 U.S. 113, 118-19

(2003) (internal quotation marks and citations omitted) (emphasis original).

ANSWER:      The <u>NAACP v. Alabama</u> and <u>Hicks</u> decisions speak for themselves and therefore

no response is required.  Defendants deny any allegation that is inaccurate or inconsistent with

the cited cases and deny any violation of the law set forth therein.

72. Defendants' policy and practices empower "city administration . . . to deny permission or

    remove any flag it considers contrary to the City's best interest." Defendants interpret this

    provision in a way that allows them to prevent any symbolic speech that would offend a large

    number of their Nashua constituents. Flags expressing popular or majoritarian opinions can

    be displayed while flags that express dissenting viewpoints, on both the right and the left, are

    forbidden. Defendants' policy violates the First Amendment right of free speech on its face

    because it is substantially overbroad, sweeping in vast amounts of protected political

    expression.

ANSWER:      The Defendants admit that a portion of the 2022 policy is accurately quoted but

deny the remaining allegations in Paragraph 72 of the Complaint.

73. By enforcing this flag policy, Defendants, under color of law, deprive Plaintiffs of their right

    to free speech in violation of the First and Fourteenth Amendments to the United States

    Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983 and, therefore, are

    entitled to damages; declaratory and preliminary and permanent injunctive relief against

    continued enforcement and maintenance of Defendants' unconstitutional customs, policies,

    and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

ANSWER:      Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense (Failure to State a Claim for Relief)

The Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense (Waiver/Release)

The Plaintiffs have waived or released their prayed-for injunctive relief by failing to timely file their Complaint.

### Third Affirmative Defense (Mootness)

The injunctive relief sought by the Plaintiffs is moot because the City enacted a new Policy on October 7, 2024 whereby it makes clear that the flagpoles are owned and controlled by the City, that they are not a public fora, and that the flagpoles are not for use by the citizens of Nashua.

### Fourth Affirmative Defense (Law of the Case)

The Plaintiffs' claims are barred in whole or in part by the law of the case as articulated in the Defendants' Opposition to the Plaintiffs' Motion for Preliminary Injunction to the extent the Court rules in support of their opposition.

### Fifth Affirmative Defense (Laches)

The Plaintiffs' claims are barred by the doctrine of laches.

### Sixth Affirmative Defense (Unclean Hands)

The Plaintiffs' claims are barred by the doctrine of unclean hands.

### Seventh Affirmative Defense (Qualified Immunity)

The Plaintiffs' claims are barred by the doctrine of qualified immunity.

**Eighth Affirmative Defense (Municipal Immunity)**

The Plaintiffs' claims are barred by the doctrine of municipal immunity.

**Ninth Affirmative Defense (Narrow Tailoring)**

The Plaintiffs' claims are barred because the policy at issue is appropriately tailored to furthering a significant and compelling government interest.

**Tenth Affirmative Defense (Lack of Prior Restraint)**

The Plaintiffs' claims are barred because the policy at issue does not constitute an improper prior restraint on speech.

**Eleventh Affirmative Defense (Statute of Limitations)**

The Plaintiffs' claims are barred by the statute of limitations.

In addition to the Affirmative Defenses raised above, the Defendants reserve the right to raise additional affirmative defenses available based upon any information discovered as this matter progresses.

**PRAYERS FOR RELIEF**

WHEREFORE, the Defendants, the City of Nashua and Jennifer L. Deshaies, request that judgment be entered in their favor and against the Plaintiffs, along with any other relief that is deemed just and proper.

Respectfully submitted,
City of Nashua, Defendant
By its Attorneys,

/s/ Jonathan A. Barnes
Steven A. Bolton, Esq. (NH Bar #67)
Celia K. Leonard, Esq. (NH Bar #14574)
Jonathan A. Barnes, Esq. (NH Bar #20061)
City of Nashua
Office of Corporation Counsel
229 Main Street, P.O. Box 2019
Nashua, NH 03061-2019
(603) 589-3250
boltons@nashuanh.gov
leonardc@nashuanh.gov
barnesj@nashuanh.gov

Jennifer L. Deshaies, Defendant
By her attorneys,

By: /s/ Peter G. Callaghan
Peter G. Callaghan, Esq. (NH Bar #6811)
Kat Mail, Esq. (NH Bar #274914)
Preti Flaherty, PLLP
P.O. Box 1318
Concord, NH 03302-1318
(603) 410-1500
pcallaghan@preti.com
Dated: October 16, 2024         kmail@preti.com

26

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has this day been forwarded through the Court's electronic filing system to Bethany R. Scaer and Stephen Scaer and to all counsel of record.

$\qquad\qquad\qquad\qquad\qquad$ */s/ Jonathan A. Barnes*_____

$\qquad\qquad\qquad\qquad\qquad$ Jonathan A. Barnes