# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| BETHANY R. SCAER and STEPHEN SCAER, | |
| Plaintiffs, | Case No. 1:24-cv-00277-LM-TSM |
| v. | |
| CITY OF NASHUA, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

**REPLY ARGUMENT**

I.    DEFENDANTS CONCEDED PLAINTIFFS' FACTUAL ALLEGATIONS

Defendants have not filed any declarations or other evidentiary material, contesting Plaintiffs' facts. *See* Dkt. 21. Thus, Plaintiffs' facts should be "deemed admitted for preliminary injunction purposes." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013); *see also United States v. Lowe*, No. 20-cv-0423-JFH, 2021 U.S. Dist. LEXIS 8328, at *2 n.1 (E.D. Okla. Jan. 15, 2021).

II.    DEFENDANTS' GOVERNMENT SPEECH ARGUMENT MERELY REPEATS BOSTON'S UNSUCCESSFUL *SHURTLEFF* ARGUMENT.

The flags on Nashua's Citizen Flag Pole are the private speech of flag applicants, as the pole's history, its public perception, and the extent of government shaping and control shows. *See Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022). Defendants attempted justification of their 2022 flagpole policy merely repeats arguments that the Supreme Court held insufficient in *Shurtleff*. *See* Dkt. 21 at 6-8.

For the history factor, Defendants assert—without citing evidence—that their 2022 policy is constitutional because they supposedly based it on the policy in San Jose, California. Dkt. 21 at 2, 6. Even cursory comparison between Nashua's policy and San Jose's reveals how dissimilar they are. San Jose lacked any flag application process. Instead, the city simply "list[ed] approved flags that may be flown," prohibited all flags not listed, and restricted who could request each pre-approved flag. *Shurtleff*, 596 U.S. at 257-58; *see also* Brief for Commonwealth of Massachusetts *et al.* as *Amici Curiae* 18, *Shurtleff*, 596 U.S. (describing San Jose's

1

policy and providing a hyperlink to it: https://bit.ly/30tX0Fu). For instance, San Jose allowed the flags of the governments recognized by the United States, but only at the request of the mayor or certain city officials. *See* Brief for Massachusetts at 18.

In contrast, Nashua's 2022 policy contains no list of approved flags or requesters. Dkt. 2-6. It allows "[a]ny group" to apply to fly any "flag in support of cultural heritage, [to] observe an anniversary, honor a special accomplishment, or support a worthy cause." *Id.* Indeed, Defendants called this pole the "Citizen Flag Pole," until at least December 2023—after the 2022 policy was created and after one of Scaers' three rejected applications. *See* Ex. L; *see also* B. Scaer Supp. Dec, ¶¶ 2-5; Dkt. 2-2, ¶¶ 5-6, 30; *cf.* Dkt. 24, ¶ 10; Dkt. 2-3.

As for perception, Defendants assert without evidence that "[c]ommon sense would dictate" the public sees the Citizen Flag Pole as government speech because the pole stands "in front of City Hall [] on City property." Dkt. 21 at 7. But Boston made this same argument about its pole—also located on a city hall plaza, next to poles flying the American and state flags. *See Shurtleff*, 596 U.S. at 249, 255. The Supreme Court rejected this argument, partly because the flags "were raised in connection with ceremonies at the flagpoles' base." *Shurtleff*, 596 U.S. at 255. "[A] pedestrian . . . might simply look down onto the plaza, see a group of private citizens conducting a ceremony without the city's presence, and associate the new flag with them," not with the city. *Id.* The Supreme Court considers flag-raising ceremonies (which often have no city officials attending) and the speeches at these

2

ceremonies to be deeply relevant to who is speaking. *See* Dkt. 2-2, ¶¶ 10, 19-20, 28-29; Dkt. 2-1, ¶¶ 7, 10, 12, 14-15; *cf.* Dkt. 24, ¶ 19.

Viewers are especially likely to perceive a flag as private, when, as in May 2024, the flag displayed is an explicitly Christian one, whose message Nashua could not endorse without violating the Constitution. *See* Dkt. 2-2., ¶¶ 12, 19-20, 29; Dkt. 2-1, ¶¶ 10-11, 15; *cf.* Dkt. 24, ¶ 21. Defendants assert they can fly religious flags "without necessarily endorsing" the religious message of those flags. Dkt. 21 at 7. Not so, under Nashua's own 2022 policy, for the city only permits flags with messages "that the city wishes to express and *endorse*." Dkt. 2-6 (emphasis added); *cf.* Ex. M (similar)

For the shaping and control factor, Defendants merely note that the city reviews applications and allegedly only approves flags that meet the 2022 policy's criteria: flags that are "in harmony with city policies and messages that the city wishes to express and endorse." Dkt. 21 at 7; Dkt. 2-6. But "[i]f private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Matal v. Tam*, 582 U.S. 218, 235 (2017). "Without more, the mere existence of a review process with approval authority is insufficient." *Cajune v. Indep. Sch. Dist.* 194, 105 F.4th 1070, 1081 (8th Cir. 2024).

Like Nashua, Boston required flag applicants to state what flag would be flown and describe in writing the flag-raising ceremony planned—yet approved flags remained private speech. *See Shurtleff*, 596 U.S. at 256-57; *cf.* Dkt. 2-10. Similarly,

3

in *Tam*, the Patents and Trademark Office required applicants to demonstrate that the mark met strict criteria (such as not "disparag[ing] persons . . . or bring[ing] them into contempt, or disrepute") or the PTO would refuse to register it—yet trademarks remained private speech. *Tam*, 582 U.S. at 227-28.

Here, Nashua does not edit or shape a flag's iconography or message; it simply approves or rejects them. Applicants provide their own flag, describe their flag's fixed iconography and meaning, and organize the flag-raising ceremonies on their own. *See* Dkt. 2-7 at 2; Dkt. 2-2, ¶¶ 10, 19-20, 28-29. Nashua's lack of involvement contrasts sharply with cases where courts found government speech. *See, e.g., Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 213 (2015) (finding shaping and control when state "actively exercised" its "sole control over the design, typeface, color, and alphanumeric pattern for all license plates"); *Cambridge Christian Sch., Inc. v. Fla. High Sch. Ath. Ass'n, Inc.*, No. 22-11222, 2024 U.S. App. LEXIS 22302, at *42, *51, *55 (11th Cir. Sep. 3, 2024) (finding shaping and control when the government "entirely scripted" announcements at sporting event and limited advertisements to a small group of chosen sponsors who had to submit ads' text for pre-approval and integration into script).

Defendants assert that Nashua adopts the message of flags on the Citizen Flag Pole. Dkt. 21 at 8. But the idea that Nashua can "simply adopt[]" an applicant's flag "without alteration" and have it "be considered the [city's] speech . . . runs afoul of the Supreme Court's pronouncement." *Cajune*, 105 F.4th at 1081. "For the adopted expression to qualify as the government's, the private party must alienate control

4

over the medium of expression to the government . . . Otherwise, the government is simply providing a forum." *Shurtleff*, 596 U.S. at 270-71 (Alito, J. concurring).

In *Summum*, for instance, the city adopted a donated monument when it "took ownership of that monument and put it on permanent display in a park that it owns and manages" so that "[a]ll rights previously possessed by the monument's donor have been relinquished." *Pleasant Grove City v. Summum*, 555 U.S. 460, 473-74 (2009). In *Walker*, which "likely marks the outer bounds of the government-speech doctrine," *Tam*, 582 U.S. at 238, the state adopted a proposed plate design because it "own[ed] the designs on its license plates" which served as "government IDs" and "dictate[d] the manner in which drivers may dispose of unused plates." *Walker*, 576 U.S. at 212; *see also Shurtleff*, 596 U.S. at 271 n.3 (Alito, J. concurring).

Here, flag applicants own the flags, provide them to Nashua for a short period, often raise them on the pole themselves with no one from the city present, and can take possession of the flags again afterwards. Dkt. 2-2, ¶¶ 7-8, 10, 19; Dkt. 2-1, ¶¶ 10, 12. Applicants do not alienate ownership or control over their flags at all.

All three factors, thus, demonstrate that the flags are private citizen speech.

III.   DEFENDANTS DISCRIMINATED BASED ON VIEWPOINT WHEN THEY DENIED THE SCAERS' FLAGS AS UNWORTHY AND CONTRARY TO NASHUA'S BEST INTEREST

In both limited public fora and nonpublic fora, government restrictions must be viewpoint neutral. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 780, 806 (1985). But Defendants rejected the Scaers' flags because their

5

message—that is, their viewpoint—was "not in harmony with the message the City wishes to express and endorse." Dkt. 2-10 at 3; Dkt. 2-12 at 2; *see also* Dkt. 2-6.

Defendants also claimed they denied the Scaers' flags because these flags do not "observe an anniversary . . . or support a worthy cause" and were "not in the City's best interest." Dkt. 21 at 11-12. But the Scaers' flags supported causes and commemorated yearly dates, such as the 50th Anniversary of Title IX. Dkt. 2-10 at 3; Dkt. 2-12 at 1; Dkt. 2, ¶ 30. Defendants consider these anniversaries and causes unworthy, as they might bring "controversy or unrest" and are not "longstanding charit[ies]." Dkt. 21 at 11-12. But "the First Amendment's protections" do not "belong only to speakers whose motives the government finds *worthy*; its protections belong to all, including to speakers whose motives others may find misinformed or offensive." *303 Creative LLC v. Elenis*, 600 U.S. 570, 595 (2023) (emphasis added).

IV.  THE SCAERS ARE LIKELY TO SUCCEED ON THEIR PRIOR RESTRAINT, VAGUENESS, AND OVERBREADTH CLAIMS

Although prior restraint analysis applies differently in a limited public forum or a nonpublic forum than in a traditional public forum, speech regulations cannot grant government officials unbridled discretion to prohibit disfavored speech in any type of fora. *See, e.g.*, *Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 427-28 (5th Cir. 2020); *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1226-27 (11th Cir. 2017); *Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Sch.*, 457 F.3d 376, 386 (4th Cir. 2006). Defendants denied Plaintiffs' flag applications under a 2022 policy that lacks objective criteria and grants boundless

discretion to government officials. *See* Dkt. 2-6; Dkt. 2-2, ¶¶ 34-37, 48-49; Dkt. 2-1, ¶¶ 19, 27-28.

Similarly, vagueness and overbreadth doctrines apply to government policies limiting access to a forum just as they do to laws. *See, e.g.*, *Virginia v. Hicks*, 539 U.S. 113, 117, 121 (2003); *Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cnty. Sch. Dist. No. 9*, 880 F.3d 1097, 1107 (9th Cir. 2018); *Sanchez v. Turner*, 00 Civ. 1674 (AGS), 2002 U.S. Dist. LEXIS 10911, at *16, *23 (S.D.N.Y. June 19, 2002). Defendants' 2022 policy lacks objective standards and its language is undefined, vague, and subjective. *See* Dkt. 2-6.

### V. NASHUA'S REPEAL OF ITS 2022 FLAG POLICY CANNOT NOT SATISFY ITS BURDEN OF PROVING MOOTNESS

After the Scaers filed their lawsuit and motion for preliminary injunction, Defendants repealed the 2022 policy—tacitly recognizing that their old policy was unconstitutional. *See* Dkt. 21 at 3. This abrupt change is a transparent attempt to avoid judicial scrutiny, but it cannot moot the Scaers' claim for injunctive relief.

A case is moot only when it becomes impossible for a court to grant any effectual relief. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). A defendant seeking to escape judgment based on his voluntary cessation "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). This is a heavy burden, because "[w]ere the rule more

forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off." *FBI v. Fikre*, 601 U.S. 234, 241 (2024).

This case is not moot because this Court can grant relief by: (1) enjoining Defendants from denying Plaintiffs' applications under their City Hall Plaza Events policy, from restoring their 2022 flagpole policy, or from closing the Citizen Flag Pole as a forum entirely; (2) protecting the Scaers' rights in future by declaring that Defendants' past denials were unconstitutional;[1] and (3) awarding the Scaers nominal damages for past harms. Even Defendants admit that part of Plaintiff's requested injunctive relief, if granted, would operate on the new flagpole policy just as it did on the 2022 policy. Dkt. 21 at 17-18.

Governments may not close a limited public forum for "a disguised impermissible purpose" due to "the potential for self-imposed or government censorship." *United States v. Griefen*, 200 F.3d 1256, 1262 (9th Cir. 2000). "A city should not be able to shut down a [public forum]" so as "to avoid a particular speech . . . that is not a viewpoint neutral measure and violates the First Amendment." *Rhames v. City of Biddeford*, 204 F. Supp. 2d 45, 53 (D. Me. 2002); *see also Act-Up v. Walp*, 755 F. Supp. 1281, 1290 (M.D. Pa. 1991) (preliminary enjoining a viewpoint-discriminatory forum closure). Here, Defendants repealed their 2022 policy to avoid flying flags they dislike. The forum's closure itself, then, can be enjoined.

---

[1] Declaratory judgments affect the relationship of parties in the future and thus provide prospective relief. *See, e.g., L.A. Cnty. v. Humphries*, 562 U.S. 29, 31 (2010); *Donahue v. City of Bos.*, 304 F.3d 110, 116 (1st Cir. 2002).

8

Moreover, Defendants' actions demonstrate that they are likely to return to their old policy or use their City Hall Plaza Events policy as a substitute for their old policy, if this Court does not give relief. Defendants still insist that their 2022 flag policy is valid. *See generally* Dkt. 21. Presently, Defendants use a City Hall Plaza Events policy that is almost identical to the 2022 flag policy. *See* Ex. M; B. Scaer Supp. Dec, ¶¶ 6-7. People who wish to hold an event on City Hall Plaza apply using the same 2022 Special Event Application and 2022 Special Event Procedures that flag applicants formerly used—and both these documents still discuss flag requests. *See* Ex. M; Dkt. 2-7 at 2; B. Scaer Supp. Dec, ¶ 6. Ceremonies at the City Hall Plaza are permitted only if the ceremony's message is "in harmony with city policies and messages that the city wishes to express and endorse" and in "the City's best interest." Ex. M.

The Scaers have held ceremonies expressing their viewpoints on City Hall Plaza in the past and, if permitted, would hold more ceremonies in the future, even if they can no longer fly flags. B. Scaer Supp. Dec, ¶¶ 10-11; *see also* Dkt. 2-2, ¶¶ 7, 19-20, 29, 44; Dkt. 2-1, ¶¶ 10-11, 15. Indeed, Defendants already denied the Scaers' application to hold ceremonies on City Hall Plaza to commemorate the 249th anniversary of Bunker Hill and Detransitioner Awareness Day. Dkt. 2-10 at 3; Dkt. 2-12 at 1; Dkt. 2-1, ¶ 16. By not repealing their unconstitutional Plaza Events policy, Defendants show that, if the Scaers applied to hold more ceremonies in the future expressing disfavored viewpoints, the Scaers could and likely would be denied on the same grounds that Defendants denied their flag applications.

9

The flagpole program runs out of the mayor's office, see Dkt. 2-11, and Defendant Donchess evidently repealed the 2022 policy on his own authority as mayor, without needing approval from the Board of Aldermen, Dkt. 22. If this Court does not grant relief, Defendant Donchess could restore the old policy just as easily as he repealed it. Indeed, a spokesman for Nashua has publicly "denied that the mayor had made any change to the city's flagpole policy" and stated that Donchess was "merely clarifying the existing policy." Ex. N. If the city itself admits that it has not changed its 2022 policy, which is still "existing," then Plaintiffs' request for preliminary relief cannot be moot.

VI. **IT IS IN THE PUBLIC INTEREST TO ENJOIN THE IRREPARABLE HARM THAT THE SCAERS AND OTHERS ARE SUFFERING**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese v. Cuomo*, 592 U.S. 14, 19 (2020) (citation omitted). Each day that the Scaers cannot exercise their rights is itself irreparable. Moreover, "protecting rights to free speech is ipso facto in the interest of the general public." *McBreairty v. Sch. Bd. of RSU22*, 616 F. Supp. 3d 79, 98 (D. Me. 2022).

## CONCLUSION

This Court should grant Plaintiffs' motion for preliminary injunction.

| | |
|---|---|
| Dated: October 17, 2024 | Respectfully submitted, |
| | |
| */s/ Roy S. McCandless* | /s/ *Nathan J. Ristuccia* |
| Roy S. McCandless | Nathan J. Ristuccia*‡ |
| New Hampshire Bar No. 11850 | Virginia Bar No. 98372 |
| MCCANDLESS LAW FIRM | Endel Kolde* |
| 125 North State Street | Washington Bar No. 25155 |
| Concord, New Hampshire 03301 | INSTITUTE FOR FREE SPEECH |
| Tel: (603) 841-3671, Ext. 101 | 1150 Connecticut Ave., NW |
| Fax: (603) 513-2799 | Suite 801 |
| roysmccandless@gmail.com | Washington, D.C. 20036 |
| | Tel: (202) 301-3300 |
| | Fax: (202) 301-3399 |
| | nristuccia@ifs.org |
| | dkolde@ifs.org |
| | |
| | *Pro hac vice |
| | |
| | *Counsel for Plaintiff* |

---

‡ Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2024, a copy of the foregoing document was served on all counsel of record, using the Court's CM/ECF system.

Dated: October 17, 2024

                                                      *s/Nathan J. Ristuccia*