UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| BETHANY R. SCAER and STEPHEN SCAER, <br><br> Plaintiffs <br><br> v. <br><br> CITY OF NASHUA, a municipal, Corporation; JAMES W. DONCHESS, Mayor, City of Nashua, in his official and Individual capacities; JENNIFER L. DESHAIES, Risk Manager, City of Nashua, in her official and individual capacities, <br><br> Defendants. | Civil No.: 1:24-cv-00277-LM-TSM |

**DEFENDANTS' REPLY TO PLAINTIFFS'
OBJECTIONS TO THE REPORT AND RECOMMENDATION**

The Defendants, City of Nashua, James W. Donchess, Mayor of the City of Nashua, Jennifer L. Deshaies, Risk Manager for the City of Nashua, by and through counsel, hereby submit the within Reply to Plaintiffs' Objections to the Report and Recommendation and, in support thereof, states as follows:

The Plaintiffs have failed to identify any factual or legal determinations of the magistrate judge that should be decided differently. The Plaintiffs incorrectly portray the magistrate judge's ruling as using the wrong legal standard and improperly extending the government speech doctrine. Their use of and reliance on *Matal v. Tam*, 582 U.S. 218, 238 (2017) and *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015) are misplaced: those cases do not determine the outcome here in the manner Plaintiffs suggest. This case involves a straightforward application of *Shurtleff v. City of Boston*, 596 U.S. 543 (2022) to the undisputed facts, which results in the same determination made by the magistrate judge.

1

The crux of the government speech doctrine is that the government has the right to decide the messages with which it is associated. In 2022, following the guidance of the Supreme Court in *Shurtleff*, the City of Nashua enacted a policy to exercise that right. It would regulate the fourth flagpole in front of City Hall by permitting flags to fly only if they were "in harmony with city policies and messages that the city wishes to express and endorse." Doc. No. 26-2 at 9. And the City enforced its policy by assessing all flags before they flew, and refusing to fly those that did not comply with the policy, including Plaintiffs' flags.

This sort of program where private individuals propose messages to the government, and the government evaluates and either approves or rejects the proposals, has been examined by the Supreme Court. Based on Plaintiffs' argument, one would think these programs, wherein the government "merely review[s] applications" by private citizens, can never result in government speech. *See* Doc. No. 33 at 16. But in *Walker*, the Court found contrary to Plaintiffs' assertions by holding that messages approved by the State of Texas through such a program constituted government speech. Plaintiffs' unsupported contentions and claims do not affect the straightforward conclusion that the speech at issue is governmental (in line with applicable Supreme Court precedent) and that granting a preliminary injunction is not appropriate.

**A. The City of Nashua controlled the messages displayed on the fourth flagpole under the 2022 Flag Pole Policy by actively reviewing, accepting, and rejecting applications.**

Plaintiffs begin their objection in Section I by arguing that the magistrate judge wrongfully equates "approving speech with adopting speech." Doc. No. 33 at 4. But that is not the case. They later argue in Section II.C. that the City of Nashua does not "shape or control" the message of the flags displayed on the fourth flag pole because it merely "[a]pprov[es] private speech without altering it." Doc. No. 33 at 13. These arguments both relate to the third *Shurtleff* factor, control.

For this reason—and because, under similar circumstances in *Shurtleff*, the control factor was determined to be most salient, *see Shurtleff*, 596 U.S. at 256—this factor will be addressed first.

Plaintiffs argue that "the magistrate judge wrongly equated shaping and control with mere approval." Doc. No. 33 at 13. It is Plaintiffs, however, that misunderstand what the "control" factor requires. Contrary to Plaintiffs' assertions, control over speech does not require that the government edit or alter the speech or that the speech be permanently alienated to the government's possession or control once approved of. Doc. No. 33 at 13-14. These factors were either not governing or not mentioned at all in *Summum*, *Walker*, *Tam*, and *Shurtleff*. Rather, the Supreme Court explained in *Walker* that "final approval authority," so long it is exercised with at least "receptive selectivity," is sufficient for the government to adopt speech as its own.

*Walker* concerned a program where nonprofit entities could submit designs for specialty license plates to the State of Texas for approval. *Walker*, 576 U.S. at 205. Under the program, a nonprofit seeking approval of a design was required to provide the State with a draft design of the proposed license plate. *Id*. State officials could decline to approve the new specialty plate on several grounds, including "if the design might be offensive to any member of the public." *Id*. The *Walker* court held that the iconography on specialty license plates approved through this program constituted government speech and thus did not trigger First Amendment scrutiny. *Id*. at 207, 219.

The application-and-approval program established for specialty license plates in Texas resembles the program by which the City of Nashua implemented its 2022 Flag Pole Policy. In both contexts, private persons design images and submit them to the government for approval to be used on government property (a license plate or City Hall flagpole, respectively). Both the State of Texas and the City of Nashua determine whether the message conveyed by a submitted image

3

is one with which it would like to be associated.[1] This sort of evaluation aptly is described by the *Summum* court as "selective receptivity." *Pleasant Grove City v. Summum*, 555 U.S. 460, 473 (2009); *see also Walker*, 576 U.S. at 210. If approved, the speech appears in a location closely associated with and controlled by the government. *Walker*, 576 U.S. at 212 (citing *Summum,* 555 U.S., at 471) (issuers of ID "typically do not permit" IDs to bear "message[s] with which they do not wish to be associated") ; *Shurtleff*, 596 U.S. at 254 ("Not just the content of a flag, but also its presence and position have long conveyed important messages about government."). And the modes of speech (license plates and flags at City Hall, respectively) are those through which the government historically communicates.

It is therefore strange that Plaintiffs place their reliance on *Walker*. Plaintiffs assert that *Walker* set "outer bounds" for what may constitute government speech, and argue that the speech at issue in this case is beyond those bounds. Doc. No. 33 at 4-6 (citing *Matal v. Tam*, 582 U.S. at 238). But Plaintiffs draw only false distinctions between the instant case from *Walker*. Plaintiffs assert that, unlike Nashua, Texas "actively exercised" its "sole control" over the appearance of the specialty license plates and had "exclusive choice over [the] designs," as though the City of Nashua does not have the same authority with respect to the fourth flag pole. Doc. No. 33 at 5. Plaintiffs intimate that this case differs from *Walker* in that Nashuans submit their designs "for approval or rejection only," as though the Texans in Walker did not do the same. Doc. No. 33 at 6. Indeed, the Supreme Court in *Walker* found that it was Texas's "final approval authority" that "allow[ed] [it] to choose how to present itself and its constituency." *Walker*, 576 U.S. at 213; *see also Shurtleff*, 596 U.S. at 257 ("In *Walker*, a state board "maintain[ed] direct control" over license plate designs

---

[1] The law at issue in *Walker* did not specifically cite the State's desire to be associated with a message as a criterion for evaluating designs. But the *Walker* Court acknowledged the plain reality that license plates are IDs, and issuers of ID "typically do not permit" the placement on their IDs of "message[s] with which they do not wish to be associated." *Summum,* 555 U.S., at 471.

4

by "actively" reviewing every proposal and rejecting at least a dozen."). The State of Texas and the City of Nashua have final approval authority of the same character, and exercise that authority in the same manner, despite Plaintiffs' indications to the contrary.

Plaintiffs neglect that the constitutional issue is not what process the government uses to approve speech, but what criteria the government employs in evaluating it and how rigorously the government enforces the criteria—in other words, whether the government controls the messaging. This is underscored by *Tam* and *Shurtleff*.

*Tam* held that the government does not adopt speech simply by approving an application to register a trademark. The Supreme Court examined the process used by the Patent and Trademark Office (PTO) to evaluate trademark applications. The PTO compares marks against a neutral set of criteria set forth in the Lanham Act and, if the mark meets the criteria, "registration is mandatory." *Id*. at 235-36. The Supreme Court found it important that, unlike *Walker* and the instant case, a PTO examiner "does not inquire whether any viewpoint conveyed by a mark is consistent with Government policy or whether any such viewpoint is consistent with that expressed by other marks already on the principal register." *Id*. at 235. And in *Shurtleff*, as it related to the control element, the issue was not that the City of Boston's flag-raising program was one of application and "mere" approval. The issue was that Boston had a policy of approving every flag-raising application, without exception, until Shurtleff's. *Shurtleff*, 596 U.S. at 256. The City did not consider what message a proposed flag would send; indeed, the City did not view the flags before they were hung. *Id*. at 256-57.

As the magistrate judge recognized, the City of Nashua exercises control over speech by actively reviewing submissions and rejecting those with which it does not want to be associated. It was this sort of review that resulted in government speech in *Walker*, that Boston lacked in

5

*Shurtleff*, and that Nashua implemented in its 2022 Flag Pole Policy. Plaintiffs insist that control over speech requires more, but provide only contextless quotes and nonbinding authority to support their argument. The magistrate judge's finding that the control element disfavors an injunction should be upheld.

    **B. The magistrate judge correctly found that the history of the fourth flagpole weighs in favor of a finding of government speech.**

    The magistrate judge found that, between 2017 and 2022, the fourth flag pole served as a means for private expression. Doc. No. 32 at 23. She additionally observed that the City's use of the flagpole "changed significantly" under the 2022 Flag Pole Policy, and that this "changed course" transformed the flag pole into a means for governmental expression. *Id.* at 23, 25. Despite the magistrate judge's five-page historical analysis that led her to this conclusion, Plaintiffs accuse the magistrate judge of "ignore[ing]" the pre-2022 history of the flagpole. Doc. No. 33 at 8.

    The basis for Plaintiff's accusation is that the magistrate judge, having found that the flagpole was a means for private expression before 2022, was required to find that it remained so after 2022. Doc. No. 33 at 8. Plaintiffs neglect that history can be employed to show not just continuity, but also contrast. The magistrate judge explored the flagpole's pre-2022 past to show that, with the 2022 Flag Pole Policy, the City made a distinct (and effective) attempt at change. *See* Doc. No. 32 at 23-25. This bolstered the magistrate judge's finding that the City claimed the flagpole as government speech in 2022.

    Plaintiffs state (without support) that the 2022 Flag Pole Policy changed nothing except to add "magic words" that "altered little in practice." Doc. No. 33 at 8. As an initial matter, to belittle the 2022 policy as "magic words" discounts the importance of the City's decision to publicly claim the messages on the flagpole as its own. The *Shurtleff* Court found it significant that the City of Boston did nothing to express its intention that the flagpole was its own speech:

6

> Boston could easily have done more to make clear it wished to speak for itself by raising flags. Other cities' flag-flying policies support our conclusion. The City of San Jose, California, for example, provides in writing that its " 'flagpoles are not intended to serve as a forum for free expression by the public,' " and lists approved flags that may be flown " 'as an expression of the City's official sentiments.

*Shurtleff*, 596 U.S. at 257-58. In its 2022 Flag Pole Policy, the City of Nashua takes the *Shurtleff* court's direction to make it known that the flag pole is government speech.

> This potential use of a City flag pole is not intended to serve as a forum for free expression by the public. . . . This policy recognizes that a flag flown in front of City Hall will be deemed by many as City support for the sentiment thereby expressed[.]

In this respect, the City of Nashua bests even the State of Texas in *Walker*, which did not have a comparable policy expressing that the specialty license plates were government speech. Additionally, Plaintiffs minimize the difference in the City's conduct before and after the 2022 policy was enacted. The magistrate judge assessed the facts before her and determined that the City's approach to the flag pole "changed significantly" with the adoption of the 2022 Policy, and found it "undisputed that Nashua has exerted increasing control over the flags displayed on the Citizen Flag Pole since 2022."[2] Doc. No. 32 at 22.

Finally, Plaintiffs state that the magistrate judge "implicitly found that Nashua has a history of violating people's first Amendment rights" before 2022 and is an "unapologetic rights violator" because it occasionally refused to fly flags before 2022. Doc. No. 33 at 9. This mischaracterizes what the magistrate judge found. The magistrate judge rendered no findings as to whether Nashua's regulation of the flag pole before 2022 was constitutional. She simply observed that the pole was a means of private speech before 2022 and, far from exercising undue control over individual

---

[2] Note that the magistrate refers to the fourth flag pole as "the Citizen Flag Pole," the name it was ascribed prior to the passage of the 2022 Flag Pole Policy. With the enactment of this policy, the name "Citizen Flag Pole" was retired by the City of Nashua. Plaintiffs put much stock in a few isolated incidents of members of local government erroneously continuing to use this name. In so doing, Plaintiffs overemphasize the importance of the name. Given that she used the name "Citizen Flag Pole" in her recommendation against Plaintiffs' requested injunction, the magistrate clearly did not put any stock in it.

7

expression, the City did not make "much of an effort to shape and control the nature of the speech." Doc. No. 32 at 24. In any case, if Plaintiffs are now arguing that the City was an "unapologetic rights violator" before 2022, that is irrelevant as the subject of this case is whether the City's enforcement of the 2022 Flag Pole Policy should be enjoined.

### C. Plaintiffs lack any basis to assert that the public perceives flags flown on the fourth flag pole as private speech.

The magistrate judge found that public perception favors neither party due to the early stage of litigation and lack of a factual record. Thus Plaintiffs—who have the burden of proof—did not show they are likely to prevail on this factor. There is no support for Plaintiffs' new assertion, raised for the first time in their Objection, that the Nashua community makes "widespread" use of the name "Citizen Flag Pole." Doc. No. 33 at 10. Plaintiffs have presented evidence that the flag pole was known as the Citizen Flag Pole before 2022 and that, after 2022, there were three isolated incidents where local politicians inadvertently used the term. Doc. No. 26-2 at 3, 6; Doc. No. 28-1 at 1. Having failed to support their public perception argument on the record, Plaintiffs attempt to rewrite it. In doing so, they sidestep what the *Walker* court noted: that a citizen messenger likely values the impression that the government has endorsed their message. *See Walker*, 576 U.S. at 212-13.

Plaintiffs assert that some of the flags flown on the fourth flagpole would be "strange or inappropriate" for the City to express and, thus, the public must perceive those flags as private speech. Doc. No. 33 at 11. The magistrate judge rejected this argument, Doc. No. 32 at 27-28, and *Walker* supports the magistrate judge's approach. The magistrate judge found that the public perception factor favored neither party because although the flags could be seen as representing the views of individual citizens, they could also be seen as celebrating Nashua's diverse community. Doc. No. 32 at 28. Like the City of Nashua, Texas is a collective of individuals with

their own communities, organizations, and affiliations. Thus, "Texas's desire to communicate numerous messages [on specialty license plates] does not mean that the messages conveyed are not Texas's own." *Walker*, 576 U.S. at 517. To the contrary, through the license plate program, the State was able to "cho[ose] how to present itself and its constituency." *Id*. at 214. For that reason, "Texas offers plates celebrating," for example, educational institutions, professional organizations, various causes, and even commercial products like Dr. Pepper. *See id*. at 213, 236. Compared to the license plates in *Walker*, the messages approved under the 2022 Flag Pole Policy are prototypically governmental.

Citing *Tam*, Plaintiffs accuse the City of Nashua of "babbling incoherently and prodigiously." Doc. No. 33 at 12 (citing *Tam*, 582 U.S. at 236). This case is nothing like *Tam*. Had the Supreme Court in *Tam* held that all trademarked content was government speech, the government would be endorsing *millions* of messages—many of them corporate promotions or wildly controversial—without evaluating the marks' message first. *See Tam*, 582 U.S. at 235 (a PTO examiner "does not inquire whether any viewpoint conveyed by a mark is consistent with Government policy"). The City's flying of many flags with a variety of viewpoints serves the purposes of the 2022 Flag Pole Policy: to "support cultural heritage, observe an anniversary, honor a special accomplishment, or support a worthy cause." Doc. No. 26-2 at 9.

Plaintiffs end their public perception argument with the same flippant reference to the Establishment Clause contained in their Motion for a Preliminary injunction. *See* Doc. No. 2 at 13. The magistrate judge dismissed this argument because it is "too speculative to conclude that individuals who viewed those flags performed any such analysis or that their concerns about the Establishment Clause led them to draw any conclusions about the nature of the speech conveyed by the flags." Doc. No. 32 at 28. Moreover, flying a Christian flag outside of Nashua City Hall

likely would *not* constitute an Establishment Clause Violation. The City flies a diverse array of flags associated with different community groups "in support of cultural heritage, observ[ing] an anniversary, honor[ing] a special accomplishment, or support[ing] a worthy cause." Doc. No. 26-2 at 9. The Supreme Court has repeatedly held that acts of respect and tolerance—even though they carry some risk of associating religion and the government—are not establishment so long as the government does not intend to endorse a single religion and the speech has a secular purpose. *See, e.g.*, *Van Orden v. Perry*, 545 U.S. 677, 683, 701 (2005) (finding a monument at the Texas State Capital inscribed with the Ten Commandments constitutional because "religion has been closely identified with our history and government" and the state intended a "secular message"). "In our modern, complex society, whose traditions and constitutional underpinnings rest on and encourage diversity and pluralism in all areas, an absolutist approach in applying the Establishment Clause is simplistic and has been uniformly rejected by the Court." *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984) (finding inclusion of Christian creche in holiday display on public land not violative of the Establishment Clause). Accordingly, "the Court has scrutinized . . . official conduct to determine whether, in reality, it establishes a religion or religious faith, or tends to do so." *Id.*; *see also Van Orden*, 545 U.S. at 690 ("Simply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause."). Plaintiffs' reckless employment of the Establishment Clause is incomplete and insufficient to support their burden of proving that preliminary injunction is necessary.

WHEREFORE, for the reasons set forth above, Defendant respectfully requests this Honorable Court to:

A. Accept the magistrate judge's recommended disposition; and

B. Grant such other relief as may be just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | CITY OF NASHUA, Defendant |
|  | By its Attorneys, |
| Dated: January 6, 2025 | */s/ Jonathan A. Barnes* <br> Steven A. Bolton, Esq. (NH Bar #67) <br> Celia K. Leonard, Esq. (NH Bar #14574) <br> Jonathan A. Barnes, Esq. (NH Bar #20061) <br> City of Nashua <br> Office of Corporation Counsel <br> 229 Main Street, P.O. Box 2019 <br> Nashua, NH 03061-2019 <br> (603) 589-3250 <br> boltons@nashuanh.gov <br> leonardc@nashuanh.gov <br> barnesj@nashuanh.gov |
|  | JAMES W. DONCHESS, Defendant |
|  | By his attorneys, |
| Dated: January 6, 2025 | */s/Michael A. Pignatelli* <br> Michael A. Pignatelli, NH Bar No. 2026 <br> Adam B. Pignatelli, NH Bar No. 20211 <br> Rath, Young and Pignatelli, PC <br> 20 Trafalgar Square #307 <br> Nashua, NH 03063 <br> (603) 889-9952 <br> map@rathlaw.com <br> abp@rathlaw.com |
|  | JENNIFER L. DESHAIES, Defendant |
|  | By her attorneys, |
| Dated: January 6, 2025 | */s/Kat Mail* <br> Kat Mail, NH Bar No. 274914 <br> Peter G. Callaghan, NH Bar No. 6811 <br> Preti Flaherty, PLLP <br> P.O. Box 1318 <br> Concord, NH 03302-1318 <br> (603) 410-1500 <br> kmail@preti.com <br> pcallaghan@preti.com |

**CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing has this day been forwarded through the Court's electronic filing system to all counsel of record.

                /s/*Kat Mail*
                Kat Mail