UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Stephen Scaer et al

v.

Civil No. 24-cv-277-LM-TSM
Opinion No. 2026 DNH158 P

Nashua, NH, City of

**O R D E R**

Bethany and Stephen Scaer brought this suit under the United States Constitution and 42 U.S.C. § 1983 against the City of Nashua, New Hampshire. The central conflict hung on a dispute over Nashua's pre-2024 "citizen flagpole" policy. On May 18, 2026, the court entered an order approving the parties Agreement for Judgment Pursuant to Federal Rule of Civil Procedure 68 (doc. no. 59). Judgment entered on May 21, 2026 (doc. no. 60). Before the court is the Scaers' motion for $249,960.90 in attorney fees and costs (doc. no. 63). Nashua argues that the Scaers are not a prevailing party under the relevant statute and thus not entitled to fees and costs. In the alternative, Nashua maintains that the rates requested are unreasonable and that the requested award should be reduced. For the following reasons, the Scaers' motion (doc. no. 63) is granted in part. The court awards the Scaers $136,071.35 in attorney fees and costs.

## DISCUSSION

### I. Legal Principles

Ordinarily, a party bears their own attorney fees and costs. Garavanian v. JetBlue Airways Corp., 149 F.4th 95, 98 (1st Cir. 2025). Congress, however, has

enacted fee-shifting provisions in several areas "to ensure that federal rights are adequately enforced." Perdue v. Kenny A. ex rel. Winn, 599 U.S. 542, 550 (2010). Such provisions encourage plaintiffs of limited means to bring claims that, if successful, would vindicate rights of importance to the public at large but would not necessarily result in an award of damages that is adequate to attract counsel in the private market for legal services. See City of Riverside v. Rivera, 477 U.S. 561, 576-81 (1986); cf. Diaz v. Jiten Hotel Mgmt., Inc., 741 F.3d 170, 178 (1st Cir. 2013).

The relevant fee-shifting statute at issue here is 42 U.S.C. § 1988(b), which allows courts the discretion to award "the prevailing party" "reasonable" attorney fees and costs in a civil rights action such as this. "Although this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293 (1st Cir. 2001). The plaintiffs bear the burden to prove that the award requested is reasonable. Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008).

Courts generally use the "lodestar" method to calculate a reasonable fee. De Jesus Nazario v. Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009). The "lodestar" method multiplies "the number of hours productively spent" on the matter "by a reasonable hourly rate." Id. Courts look to prevailing rates in the community for similarly qualified attorneys as well as the attorney's experience and competence to determine the reasonable rate. See Gay Officers Action League, 274 F.3d at 295. To

determine the number of hours productively spent on litigation, the court must "exclud[e] those hours that are excessive, redundant, or otherwise unnecessary." Pérez-Sosa v. Garland, 22 F.4th 312, 321 (1st Cir. 2022) (quotation omitted). "Once established, the lodestar represents a presumptively reasonable fee." Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). The court then "has the discretion to adjust the lodestar itself upwards or downwards based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter." De Jesus Nazario, 554 F.3d at 207. The "trial court's discretion in respect to fee awards is extremely broad." Lipsett, 975 F.2d at 937.

## II. Plaintiffs are a Prevailing Party and Thus May be Awarded Fees.

The Scaers may only recover their attorney fees and costs from Nashua if they are a prevailing party. 42 U.S.C. § 1988(b). The Scaers assert that they satisfy this statutory requirement because the court's order dated May 18, 2026, approving the parties' Agreement for Judgment Pursuant to Rule 68 (doc. no. 59) renders them a prevailing party. The court agrees.

For a party to be considered prevailing, they "must show that a material alteration of the parties' legal relationship has taken place as a result of the litigation" and that "the alteration possesses a 'judicial imprimatur.'" Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 8 (1st Cir. 2011) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Hum. Res., 532 U.S. 598, 605 (2001)).

A. There Was a Material Change in the Legal Relationship Between the Parties

The first requirement of prevailing party status is satisfied here. "A material change occurs when the plaintiff succeeds on 'any significant issue in litigation which achieves some of the benefit the [plaintiffs] sought in bringing the suit.'" Suarez-Torres v. Panaderia Y Reposteria Espana, Inc., 988 F.3d 542, 551 (1st Cir. 2021) (quoting Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989)). The Rule 68 judgment "resolved a dispute between the parties" by "order[ing]" Nashua to adhere to the current flagpole policy and dictating that it "cannot resume its prior practice or policy" that prompted the Scaers' suit and was outlined in their complaint (doc. no. 59 at 4). See Suarez-Torres, 988 F.3d at 552. Thus, there was a material change in the legal relationship between Nashua and the Scaers.

B. The Judicial Imprimatur Requirement is Satisfied

A court-approved settlement like the one at issue here may, but does not always, satisfy the judicial imprimatur requirement. See Hutchinson, 636 F.3d at 9. The essential question in such a case is "whether the order contains the sort of judicial involvement and actions inherent in a 'court ordered consent decree.'" Aronov v. Napolitano, 562 F.3d 84, 90 (1st Cir. 2009) (en banc). To answer that question, the court considers "both the content and the context of the relevant order" approving the settlement to determine if three factors are satisfied: (1) "whether the change in the legal relationship between the parties was 'court-ordered,'" (2) "whether there was judicial approval of the relief vis-à-vis the merits

of the case," and (3) "whether there exists continuing judicial oversight and ability to enforce the obligations imposed on the parties." Suarez-Torres, 988 F.3d at 552 (quoting Hutchinson, 636 F.3d at 9).

The first factor is easily satisfied here. The court approved the Rule 68 judgment in its order dated May 18, 2026, and judgment issued incorporating the court's order of approval (doc. no. 60). "The change was therefore court ordered." Walsh v. Boston University, 661 F. Supp. 2d 91, 100 (D. Mass. 2009).

Though it is a closer call, the court also concludes that the second requirement—that the judicial review included sufficient appraisal of the merits—is satisfied. The court approved the judgment pursuant to Rule 68 against the backdrop of its interim declaratory judgment (doc. no. 54) and its April 10, 2026 order denying Nashua's motion to dismiss. The court found that the Nashua policy that the Scaers challenged was unconstitutional, and the judgment binds Nashua by preventing it from re-implementing that policy. See Aronov, 562 F.3d at 90-91; Hutchinson, 636 F.3d at 10.

Nashua argues in response that the Rule 68 judgment is not sufficient, and that the plaintiffs cannot be said to have prevailed because they did not achieve their goal of raising their own flags in front of City Hall. These arguments are unpersuasive. The relevant court action included more than a mere "implicit acknowledgment" that Nashua violated the Scaers' constitutional rights. See Suarez-Torres, 988 F.3d at 553-54. And the judgment was more than "a judicial pronouncement that [a] defendant has violated the [law] unaccompanied by 'judicial

relief.'" Buckhannon, 532 U.S. at 606 (quoting Hewitt v. Helms, 482 U.S. 755, 760 (1987)). Read together, the court's involvement here included a finding that the Nashua policy the Scaers challenged was unconstitutional, an award of nominal damages, and a permanent injunction preventing Nashua from implementing the unconstitutional policy in the future. That is sufficient. See Suarez-Torres, 988 F.3d at 553-554.

Lastly, the court is persuaded that the third factor requiring that the order impose "an obligation to comply" and "judicial oversight to enforce that obligation" is present. Hutchinson, 636 F.3d at 10. The order of judgment (doc. no. 60) incorporated the terms of the court's May 18, 2026 order approving the Agreement for Judgment Pursuant to Rule 68. The court did not "merely recognize[ ] the fact of a settlement and dismiss[ ] the underlying action." Hutchinson, 636 F.3d at 10-11. Rather, it committed to use its equitable or remedial authority to enforce the terms of the Agreement for Judgment. See Suarez-Torres, 988 F.3d at 554.

## III. The Calculation of Fees and Costs

As a prevailing party, the court finds that the Scaers are entitled to some, but not all, of the fees and costs they request. The court begins by determining the appropriate rates and then turns to the lodestar amount.

### A. The Reasonable Hourly Rates

"[T]he reasonable hourly rate in any given case 'will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria." Perez-Sosa, 22 F.4th at 325 (quoting United States v.

One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named "Flash II", 546 F.3d 26, 40 (1st Cir. 2008)). The presumption is that the rates in the forum where the court sits will apply. Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 955 (1st Cir. 1984). But if the prevailing party's counsel is from outside the district of the forum court, the forum court "may deem 'the relevant community' to be the community in which the lawyer maintains his or her principal office." 546 F.3d at 40. Though the court is located in Concord, New Hampshire, the Scaers assert that the complexity of this case required counsel based in Washington, DC, charging Boston, Massachusetts, rates. These rates are higher than the prevailing rates in New Hampshire.

The Scaers, as the party requesting fees, have the burden to rebut the presumption that the forum's rates apply with evidence that the higher out-of-town rates that they are request are appropriate. Guckenberger v. Bos. Univ., 8 F. Supp. 2d 91, 103 (D. Mass. 1998). "To do so, plaintiffs must show that "[t]he complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." Id. (quoting Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988)). Out-of-town rates are appropriate in the First Circuit when a specialist is required to handle the case and the forum community does not have one available. Id.

The Scaers were principally represented in this case by Attorney Endel Kolde and Attorney Nathan Ristuccia from the Institute for Free Speech. Attorney Kolde, who requests a rate of $800, is a constitutional and civil rights litigator with thirty

years of experience. Attorney Ristuccia requests $500; he is a historian by background who has focused on First Amendment litigation for the four years he has been a practicing attorney. They assert that their requested rates are commensurate with prevailing rates in Boston for similar attorneys (and lower than the prevailing rates in Washington, DC, where they are based).

But the Scaers were also represented in this matter by Concord, New Hampshire-based Attorney Roy McCandless. Attorney McCandless has been practicing since 1988. His affidavit submitted in support of the Scaers' fee motion asserts that he routinely litigates (and wins) constitutional cases, including those concerning the First Amendment. Indeed, the "focus" of his work is "[l]itigation and counseling in defense of First Amendment religious, speech, and association" cases. Doc. no. 63-2 at 4. Attorney McCandless' requested hourly rate of $475 for this case falls within his "normal hourly rate for paying clients," which "varies between $400 per hour and $490 per hour." Doc. no. 63-2 at 3.

The court is not persuaded by the Scaers' evidence that it should depart from the presumption that New Hampshire is the appropriate locality. To be sure, Attorney Kolde and Attorney Ristuccia are eminently qualified to litigate a case like this. But the Scaers were also represented by Attorney McCandless, who is also well qualified to litigate this case. See Guckenberger, 8 F. Supp. at 104 ("it is the fee-seeker's burden to demonstrate that a local attorney could not have provided plaintiffs with competent representation" (quotation omitted)). And he is charging his "typical" rates as an attorney who practices in Concord, New Hampshire. Doc.

no. 63-2 at 3-4. What is more, the defendants were ably represented in this matter by multiple New Hampshire-based attorneys, who charged rates ranging from $260 for associates to $450 for partners. The Scaers have not presented sufficient evidence that the local bar lacked the competence to litigate this case. See Guckenberger, 8 F. Supp. at 104. Accordingly, their "judgment call" to retain out-of-town attorneys does not entitle them to out-of-town rates. See Ackerley Commc'n of Mass., Inc. v. City of Somerville, 901 F.2d 170, 172 (1st Cir. 1990).

The court instead finds that the appropriate locality is New Hampshire. See Grendel's Den, 749 F.2d at 955 (the "presumption" is that the locality in which the forum court sits is the appropriate community for purposes of calculating a reasonable hourly rate). The court will determine the reasonable hourly rate based on "its own knowledge of attorney[ ] fees in its surrounding area" for similarly qualified attorneys and "the defense attorneys' rates in this case." See Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996). The court finds that the reasonable hourly rates are as follows:

| | |
|---|---|
| Endel Kolde | $475 |
| Roy McCandless | $475 |
| Nathan Ristuccia | $280 |

B. The Appropriate Number of Hours

Nashua challenges certain billed events in the lodestar calculation submitted by the Scaers. Specifically, Nashua asserts that certain hours billed for travel should be calculated using a reduced rate and that it was not appropriate for the

attorneys to bill for their pro hac vice admissions. Nashua also challenges generally the billed hours and subsequent lodestar as unreasonable. The court agrees in part.

An attorney's travel time as well as reasonable associated costs may be reimbursed in a fee award. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emps. v. Ray Haluch Gravel Co., 745 F.3d 1, 7-8 (1st Cir. 2014). The court has "wide discretion with respect to the treatment of travel time and expenses." Id. at 8. Though "there is no hard-and-fast rule," Hutchinson, 636 F.3d at 15, "travel time is frequently reimbursed at reduced hourly rates." Ray Haluch Gravel Co., 745 F.3d at 7-8. A reduction of such hours by fifty percent is typically appropriate. See, e.g., Sinclair v. Berryhill, 284 F. Supp. 111, 117 (D. Mass. 2018) (collecting cases). The court agrees with this reasonable approach and reduces the rate for those hours accordingly.

The court is also persuaded by Nashua's request that the Scaers' attorneys bear their own fees and costs for their pro hac vice applications. See Sinclair, 284 F. Supp. at 117. Accordingly, the court deducts $200 from the $4,900.60 in requested costs.[1] For the same reason, the court will also deduct the hours billed for preparing attorney admissions to the First Circuit.

The court is unpersuaded by Nashua's remaining arguments and declines to exercise its discretion to further adjust the lodestar. See De Jesus Nazario, 554

[1] The court otherwise finds that the Scaers' requested costs (docs. no. 63-6, 63-8, 63-10) are reasonable.

F.3d. at 207. The table below presents a summary of the fees awarded by the court and the corresponding hours.

| | Rate | Hours Requested | Hours Awarded | Hours at 50% Rate | Total Amount Awarded |
|---|---|---|---|---|---|
| Endel Kolde | $475 | 82.65 | 49.95 | 28.92 | $30,594.75 |
| Roy McCandless | $475 | 25.7 | 22.5 | 3 | $11,400 |
| Nathan J. Ristuccia | $280 | 330.6 | 307.8 | 22.8 | $89,376 |
| | | | | | **Total: $131,370.75** |

## CONCLUSION

The Scaers' motion for attorney fees and costs (doc. no. 63) is granted in part. For the foregoing reasons, the court awards the Scaers attorney fees totaling $131,370.75 and $4,700.60 in costs.

SO ORDERED.

Landya McCafferty
United States District Judge

November 3, 2026

cc: Counsel of Record